**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                      No. CR 22-0466 JB

JOHNATHON BINDUES,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Motion *In Limine* to Preclude Evidence Regarding Jane Doe's Alleged Chastity or Lack of Sexual Experience, filed April 20, 2023 (Doc. 112)("MIL").  The Court held a hearing on the MIL on April 26, 2023.  See Notice, filed April 25, 2023 (Doc. 118)(text-only entry).  The issue presented is whether the Court should prohibit Plaintiff United States of America from introducing text messages between Defendant Johnathon Bindues and the alleged victim, Jane Doe, in which Bindues and Doe discuss that Doe was a virgin before she had penetrative sex with Bindues.  The Court concludes that it will allow the United States to introduce the text messages in which Doe discusses her virginity, because the United States is not offering these text messages to prove that Doe engaged in sexual behavior or has a sexual predisposition.  Additionally, the Court will also admit text messages in which Doe describes her past sexual experiences, because the United States is not offering these text messages to prove that Doe engaged in sexual behavior or has a sexual predisposition.

**FACTUAL BACKGROUND**

      Bindues was a high school athletic coach in Los Lunas, New Mexico.  See United States' Sealed Response to Defendant's Motion in Limine to Preclude Evidence Regarding Jane Doe's

Alleged Chastity, filed April 25, 2023 (Doc. 114)("MIL Response").  The United States alleges

that, in September, 2020, Bindues began an inappropriate relationship with Doe, one of his female,

teenage athletes.  See Superseding Indictment at 1, filed February 22, 2023 (Doc. 88); MIL

Response at 1.  The United States alleges that Bindues "exploited his position of trust to coerce

and entice Jane Doe into having sex with him and also used and persuaded her to produce sexual

videos for his own pleasure."  MIL Response at 1.

       The United States also alleges that over the course of their relationship, Bindues and Doe

exchanged over 17,000 text messages.  See MIL Response at 1.  In those text messages, Bindues

and Doe discuss Doe's sexual experiences and virginity.  See MIL Response at 2-5, 9-11

(providing screenshots of text messages).  For example, Bindues and Doe discussed that Doe's

first time having penetrative sex was with Bindues:

| | |
|---|---|
| Bindues: | Are you still bleeding? |
| Doe: | im not there's no way its my period |
| Bindues: | I was thinking it wasn't haha |
| Doe: | I didnt think it was either, but then again my period is close so I mean I thought it could of been a possibility |
| Bindues: | Haha true but I was definitely thinking otherwise 😂 |
| Doe: | I know most girls bleed their first time. . so I had that otherwise thought too 😂 |
| Doe: | I know we were in like a bad angle. I knew you were in the right spot but what I meant was I was kinda asking if you could get a better angle cause it f[******] hurt at first 😂 since it was my first time I knew it was gonna hurt . . . |

MIL Response at 3-5.  In another instance, Bindues and Doe discussed Doe's sexual experience

before having penetrative sex with Bindues:

| | |
|---|---|
| Bindues: | Haha if that's what "shared things" means 😄 |
| Doe: | Well you obviously know ive kissed people before there's only so many things that can go under that quote |
| Bindues: | Haha so? |
| Doe: | i almost did.  I did start something with a guy one time.  But like I said I like personal connections over physical at first.  So when we were about to cause it got heated up to that point I asked him to wait just cause id known him for such little time, and he didnt take it very well and I got put into a position I didnt wanna be in.  I didnt have sex but I mean I wasnt comfortable with what he did.  lol youre gonna think I am immature for having a big mouth and not ever having sex.  But its not that I haven't had t[he] chance to, its just there was never a guy I felt like he liked me enough to like stay after if that makes sense.  Like guys just want sex and leave and I feel I respect myself enough to not want that which is probably why I care . . . |

MIL Response at 9.  On another occasion, Bindues and Doe discussed Doe's sexual experiences again

| | |
|---|---|
| Doe: | so sorry for not telling you right awayyyy, but I did update you somewhere along our texts last night. |
| Bindues: | Haha true, and that's when I actually realized that you lied.  Just didn't feel the need to say something 😄 |
| Doe: | sorry smh[1] |
| Bindues: | I'm not upset haha but it does make me wonder what else you've lied about because I often wonder if you're as inexperienced as you say you are |
| Doe: | i am not a liar that is one thing ik I am not.  i do often like to keep things private as much as I trust you i just get scared telling people |

---

[1]"smh" is shorthand for "shaking my head."  smh, Urban Dictionary, https://www.urbandictionary.com/define.php?term=smh (last visited April 28, 2023)("SMH Definition").  It is often used "when something is obvious, plain old stupid, or disappoint[ing]."  SMH Definition.

things sometimes.  if you are wondering how experienced i am ? i can tell you i've been fingered by one guy, i have given two separate guys a handjob.  i have made out with 5 guys and I'll name em watch 😄 adriano ortiz, brandon walker, joseph perea, jonathon trujillo and isaac sandoval.  i have made out with a girl on a DARE.  and i've kissed nobalee on a dare . . .

Doe:          and ofc[2] i've sent nudes to two people one of them being you.  that's about how experienced I am in life.  if your wondering if i've like lied about my virginity?  i haven't.  honestly if anything I was scared to tell you i am a virgin because I dont want you to see me and like a child or inexperienced . . .

MIL Response at 10-11.

## PROCEDURAL BACKGROUND

On February 2, 2023,[3] the Grand Jury indicted Bindues on two counts: (i) Coercion and Enticement, in violation of 18 U.S.C. § 2422(b); and (ii) Production of Visual Depictions of a Minor Engaging in Sexually Explicit Conduct, in violation of 18 U.S.S.C. §§ 2251(a), 2251(e), and 2256.  See Superseding Indictment at 1.  Bindues pled not guilty.  See Clerk's Minutes at 1, filed March 30, 2022 (Doc. 14).  Bindues' trial began on May 1, 2023.  See Order Granting Unopposed Motion to Continue Trial, filed March 7, 2023 (Doc. 98).

On April 20, 2023, Bindues filed the MIL.  See MIL at 1.  In the MIL, Bindues asks the Court to "enter an order prohibiting the [United States] from introducing evidence regarding Jane Doe's claims as to her chastity, or lack of sexual experience."  MIL at 1.  Bindues explains that, "[u]pon information and belief, the [United States] intends to redact the conversations where Jane Doe discusses her previous sexual encounters, as well as her sending nude photographs to other

---

[2]"ofc" is shorthand for "of course."  ofc, Urban Dictionary, https://www.urbandictionary.com/define.php?term=ofc (last visited April 28, 2023).

[3]The Grand Jury previously indicted Bindues on nine counts, see Indictment at 1, filed March 23, 2022 (Doc. 2), but later superseded that indictment, see Superseding Indictment at 1.

individuals, pursuant to Rule 412." MIL at 1-2 (citing Fed. R. Evid. 412). Bindues alleges that "such redactions are appropriate, as long as all other messages relating to Jane Doe's sexual history or propensity are also redacted." MIL at 2. Bindues asserts, however, that the United States has indicated that it does not intend to redact the text messages regarding Doe's virginity. MIL at 2. Bindues "submits that if he is barred from asking Jane Doe about her lack of chastity, the [United States] is similarly barred from introducing evidence of Jane Doe's alleged chastity under Rule 412." MIL at 2 (citing United States v. Blue Bird, 372 F.3d 989, 995 (8th Cir. 2004)("Blue Bird"); Fed. R. Evid. 412). Bindues adds that evidence regarding Doe's virginity is irrelevant and unfairly prejudicial. See MIL at 2 (citing Fed. R. Evid. 401; 403). Bindues reiterates that allowing the United States to present evidence regarding Doe's chastity without permitting Bindues to present evidence regarding her sexual experiences "leaves an incomplete and one-sided view of Jane Doe's sexual predisposition." MIL at 2-3.

The United States responds to the MIL. See MIL Response at 1. First, the United States asserts that the Court should admit evidence concerning Doe's virginity as res gestae evidence. See MIL Response at 2-6. The United States submits that the text messages regarding Doe's virginity are "inextricably intertwined with the charged offense," because they help the United States show when Bindues and Doe first engaged in sexual intercourse, and how Doe's mother discovered that Bindues and Doe were engaged in a sexual relationship. MIL at 2-6 (citing United States v. Sangiovanni, No. CR 10-3239 JB, 2013 WL 1655918, at *10 (D.N.M. March 20, 2013)(Browning, J.)). The United States asserts that it is "impossible to tell the story of Jane Doe's sexual contact with Defendant without the above text messages and the others where her virginity is discussed." MIL at 6.

Second, the United States avers that the text messages are relevant.  See MIL Response at 6-7.  The United States contends that the messages are probative whether Bindues knowingly coerced or enticed Doe.  See MIL at 6 (citing 18 U.S.C. § 2422(b)).  Further, the United States asserts that the texts are "central" to its expert witness' testimony on grooming.  MIL Response at 6-7.  "The United States' expert witness will testify that one stage of grooming involves perpetrators lowering the inhibitions of their child victim by discussing sex with them."  MIL Response at 6.  Accordingly, the United States contends that the text messages are probative of that grooming expert testimony, because they show Bindues discussing sex and virginity with Doe in a manner that is consistent with grooming.  See MIL at 6-7.  The United States adds that the texts are not unfairly prejudicial solely because they are "unfavorable to the defendant."  MIL Response at 7 (citing United States v. Martinez, 938 F.2d 1078, 1082 (10th Cir. 1991)).  The United States asserts that the Court can make a limiting instruction to curb the risk of unfair prejudice. See MIL Response at 8.

Finally, the United States clarifies which text messages it intends to redact pursuant to rule 412 of the Federal Rules of Evidence.  See MIL Response at 8-11.  Specifically, the United States indicates that it intends to redact the following text messages:

Doe:        i almost did.  I did start something with a guy one time.  But like I said I like personal connections over physical at first.  So when we were about to cause it got heated up to that point I asked him to wait just cause id known him for such little time, and he didnt take it very well and I got put into a position I didnt wanna be in.  I didnt have sex but I mean I wasnt comfortable with what he did.  lol youre gonna think I am immature for having a big mouth and not ever having sex.  But its not that I haven't had t[he] chance to, its just there was never a guy I felt like he liked me enough to like stay after if that makes sense.  Like guys just want sex and leave and I feel I respect myself enough to not want that which is probably why I care

.  .  .  .

- 6 -

Bindues:     I'm not upset haha but it does make me wonder what else you've lied about because I often wonder if you're as inexperienced as you say you are

Doe:         i am not a liar that is one thing ik I am not.  i do often like to keep things private as much as I trust you i just get scared telling people things sometimes.  if you are wondering how experienced i am ? i can tell you i've been fingered by one guy, i have given two separate guys a handjob.  i have made out with 5 guys and I'll name em watch 😅 adriano ortiz, brandon walker, joseph perea, jonathon trujillo and isaac sandoval.  i have made out with a girl on a DARE.  and i've kissed nobalee on a dare . . .

Doe:         and ofc i've sent nudes to two people one of them being you.  that's about how experienced I am in life.  if your wondering if i've like lied about my virginity? i haven't.  honestly if anything I was scared to tell you i am a virgin because I dont want you to see me and like a child or inexperienced . . . .

MIL Response at 9-11.  The United States "recognizes the tension in its request to admit" evidence concerning Doe's virginity but not evidence concerning Doe's prior sexual experiences.  MIL Response at 13.  Nevertheless, the United States contends that rule 412 forecloses the admission of evidence regarding Doe's sexual experiences and not the admission of evidence concerning Doe's chastity.  See MIL Response at 13.

The Court held a hearing on the MIL on April 26, 2023.  See Notice.  The Court began the hearing by summarizing its thinking on the MIL, because it thought it was "coming at this a little differently than . . . the counsel are."  Draft Transcript of Hearing at 4:1-2 (taken April 26, 2023)(Court)("Tr.").[4]  The Court explained

I assume that the reason that the Defendant is agreeing to these redactions that the Government is making is because the Defendant is agreeing with the Government that, under 412, the redactions that the Government is making are required.

---

[4]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

I'm of a little different view.  If you want to redact those things, that's fine with the Court.  I'll let you put on your cases the way you want to.  But if the parties are feeling that they have to redact these because of 412 . . . it seems to me that it's not required.   412 indicates prohibited uses.   "The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct, one, evidence offered to prove that a victim engaged in other sexual behavior; two, evidence offered to prove a victim's sexual predisposition."

I don't think that anybody is offering this for those two purposes . . . .  Here, we really don't care about her sexual behavior at all.  We don't care about her sexual predisposition.  All we're really caring about is what was communicated in these 17,000 text messages . . . .   We don't really care about the truth of her sexual behavior or sexual predisposition.

So it seems to me that, if everybody wanted to, we just don't redact at all here.  And I can give an instruction just to the effect that I did that, ladies and gentlemen of the jury, this case is not about the sexual behavior or sexual predisposition.  We do not care.  And nothing is being offered here to prove her sexual behavior or sexual predisposition.  It's simply to show the exchange between Mr. Bindues and the alleged victim here, and show it with all the robustness and without any redactions of any sort, so they get a feel for it.

If, on the other hand, the Defendant still is agreeable to redacting that information that the Government is redacting, then I think, in fairness to the Defendant, that we shouldn't get into the virginity or the chastity.  Because I think that, given the text messages I've seen, I think that would leave an unfair and inaccurate picture of the alleged victim here.

She is sexually active, and I think the use of the word virginity and chastity in these texts would leave a false impression.  And it's a false impression that would be in favor of the Government.

Tr. at 4:8-6:8 (Court)(quoting Fed. R. Evid. 412).

The Court asked Bindues for his thoughts on the Court's analysis.  <u>See</u> Tr. at 6:17-18 (Court).  Bindues indicated that he agrees with the Court's analysis and that he is indifferent whether the Court should admit all of the text messages regarding Doe's sexual experience and virginity, or exclude all the text messages regarding Doe's sexual experience and virginity.  <u>See</u> Tr. at 6:19-8:6 (Court, Jones).  The United States indicated that it is "comfortable" with allowing the jury to see all the text messages, subject to a limiting instruction.  Tr. at 8:7-17 (Court, Roybal).

The United States also asks that Bindues not cross examine Doe on her "sexual behavior with other boys," because that line of questioning "would bring us into 412 territory." Tr. at 8:18-21 (Roybal). The Court indicated that it "tend[s] to agree." Tr. at 9:22 (Court). Bindues agreed and indicated: "I have no intention of asking her about her previous sexual experiences." Tr. at 10:10-11 (Jones). The Court concluded by stating: "Whatever comes out in the text messages is fine. It will come in unredacted. I'll prepare a limiting instruction and send it to you today. You can take a look at it, edit it, and see what you want." Tr. at 10:21-25 (Court).

## LAW REGARDING RULE 412 IN CRIMINAL CASES

The Court provides an overview of the law regarding rule 412, which limits the admissibility of evidence relating to a victim's sexual history. See Fed. R. Evid. 412. The Court splits its survey into two parts. First, the Court explains the law regarding rule 412 as it relates to victims' prior sexual experiences. Second, the Court describes the law regarding rule 412 as it relates to victims' chastity or virginity.

1.   **Law Regarding Rule 412 and a Victim's Prior Sexual Experiences.**

Rule 412 of the Federal Rules of Evidence states, in relevant part:

(a)   **Prohibited Uses.** The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:

   (1)   evidence offered to prove that a victim engaged in other sexual behavior; or

   (2)   evidence offered to prove a victim's sexual predisposition.

(b)   **Exceptions.**

   (1)   **Criminal Cases.** The court may admit the following evidence in a criminal case:

      (A)   Evidence of specific instances of a victim's sexual behavior, if offered to prove that

someone other than the defendant was a
source of semen, injury, or other physical
evidence;

**(B)**    evidence of specific instances of a victim's
sexual behavior with respect to the person
accused of the sexual misconduct, if offered
by the defendant to prove consent or if
offered by the prosecutor; and

**(C)**    evidence whose exclusion would violate the
defendant's constitutional rights.

Fed. R. Evid. 412.  The rule also requires the following procedure before evidence may be admitted

under rule 412(b): (i) the party seeking to introduce the evidence must file a motion fourteen days

before trial that specifically describes the evidence and states the party's purpose for offering the

evidence; (ii) the party must notify the victim, or the victim's guardian or representative; and

(iii) the Court must hold a hearing in camera to assess admissibility.  See Fed. R. Evid. 412(c).

Rule 412 was amended in 1994 to apply to civil cases as well.[5]

        As the Advisory Committee, and Professors Charles Wright and Kenneth Graham,

---

[5]Until 1994, rule 412 was applicable only in criminal proceedings; plaintiffs in civil sexual-
harassment suits had to rely on rule 404 if they sought to exclude evidence of past sexual behavior,
arguing that it was being offered as evidence of propensity.  See Ferencich v. Merritt, 79 F. App'x.
408, 414 (10th Cir. 2003)(unpublished).  With the passage of the 1994 amendment, however, the
Committee recognized

        [t]he need to protect alleged victims against invasions of privacy, potential
        embarrassment, and unwarranted sexual stereotyping, and the wish to encourage
        victims to come forward when they have been sexually molested do not disappear
        because the context has shifted from a criminal prosecution to a claim for damages
        or injunctive relief.

Fed. R. Evid. 412 advisory committee's note to the 1994 amendments.  "As amended in 1994,
Rule 412 generally precludes evidence of an alleged victim's 'sexual behavior' or 'sexual
predisposition' in civil and criminal proceedings involving allegations of sexual misconduct."
Ferencich v. Merritt, 79 F. App'x at 414.

recognize, the rule has at least two underlying functions.  The first function is to promote the reporting of sexual assaults and other sexual misconduct by vitiating the victim's fear that, by reporting the incident, he or she will be opening up his or her private life to be put on display through the course of discovery and at trial:

> The manifest function of Rule 412 is protection of the privacy of the rape victim; this is justified in terms of fairness to her and by the instrumental argument that this will further the interests of the state by encouraging victims to report the crime and to cooperate with the prosecution of rapists.

23 Charles Alan Wright & Kenneth W. Graham, Fed. Prac. & Proc. Evid. § 5384, at 543 (1st ed. 1980). See Fed. R. Evid. 412 advisory committee's note to the 1994 amendments ("By affording victims protection in most instances, the rule . . . encourages victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders.").  The rule's second function is more subtle: to combat the sexual stereotyping of victims, "i.e., to prevent the jury from subverting the substantive law of rape by making the guilt of the defendant turn on the jury's assessment of the moral worth of the victim."  Wright & Graham, supra § 5384, at 544.  See Fed. R. Evid. 412 advisory committee's note to the 1994 amendments ("The rule aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process.").  It is with these two goals in mind that courts should analyze rule 412 questions.

Rule 412 is a rule of evidence, meaning that it primarily controls admissibility, as distinguished from discoverability, of certain information.  Compare Fed. R. Evid. 101 (defining the scope of the Rules of Evidence), with Fed. R. Civ. P. 26(b)(defining the scope of discovery). The Advisory Committee's notes explain specific forms of evidence that rule 412 governs.  Under

rule 412(a)(1)'s prohibition, the Advisory Committee explains that other sexual behavior "connotes all activities that involve actual physical conduct, i.e. sexual intercourse or sexual contact." Fed. R. Evid. 412 advisory committee's note. Furthermore, rule 412(a)(2) prohibits "evidence . . . relating to the alleged victim's mode of dress, speech, or life-style," unless the matter is civil and rule (b)(2)'s balancing test is satisfied. Fed. R. Evid. 412 advisory committee's note. See Ferencich v. Merritt, 79 F. App'x 408, 415 (10th Cir. 2003)(allowing evidence in a Title VII civil matter that a plaintiff showed her tongue ring to her supervisor, and that the supervisor interpreted the display as "flirting, because of its perceived sexual use," because the evidence "was relevant to both the issue of whether his sexual conduct was 'unwelcome'" and whether the plaintiff's employer knew that she was being harassed, and because the evidence's probative value substantially outweighed its prejudicial effect). Additionally, prohibited "behavior" includes "activities of the mind, such as fantasies or dreams." Fed. R. Evid. 412 advisory committee's note. On the other hand, under rule 412(b)(1)(B), a defendant may introduce "evidence of prior instances of sexual activities between the alleged victim and the accused, as well as statements in which the alleged victim expresses an intent to engage in sexual intercourse with the accused, or voiced sexual fantasies involving that specific accused" to prove that an alleged victim consented to sex with the accused. Fed. R. Evid. 412, advisory committee's note. See United States v. Ramone, 218 F.3d 1229, 1234-35(10th Cir. 2000)(finding that evidence that a victim engaged in sexual acts with inanimate objects with a defendant accused of aggravated sexual abuse of the victim involving the use of inanimate objects "squarely fits within" rule 412(b)(1)(B)'s scope of admissible evidence). Under rule 412(b)(1)(C), a court may properly admit "statements in which the victim has expressed an intent to have sex with the first person encountered on a particular occasion," so as to protect an accused's due process and Confrontation Clause rights. Fed. R. Evid

412, advisory committee's note (citing <u>Olden v. Kentucky</u>, 488 U.S. 227 (1988)).

Applying these principles, the Tenth Circuit has found that a district court did not abuse its discretion or commit plain error in a rape case by excluding evidence that a victim was partially undressed in the presence of two other men, who were not defendants in the case.  <u>See</u> <u>United States v. Pablo</u>, 696 F.3d 1280, 1299 (10th Cir. 2012).  In <u>United States v. Pablo</u>, the defendant and his co-defendant were both accused of raping the victim several hours after a dance, which the three of them attended, at which, according to the defendant, the victim was partially undressed with two other men.  <u>See</u> 696 F.3d at 1298-99.  The defendant asserted that the evidence was admissible for two purposes: (i) to demonstrate that someone other than the defendant caused the victim's physical injuries; and (ii) to demonstrate the victim's level of intoxication at the time.  <u>See</u> 696 F.3d at 1299.  The Tenth Circuit explained that the evidence did not fall within rule 412(b)(1)(A)'s exception, because the defendant did not proffer that the victim engaged in non-consensual or otherwise "extremely violent sex" with other men on the night of the alleged rape, and only non-consensual or extremely violent sex could have caused the victim's vaginal injuries. 696 F.3d at 1299.  Because the defendant could proffer only that the evidence would demonstrate that the victim had consensual sex with other men on the night of the alleged crime, the Tenth Circuit held that the evidence was not admissible under rule 412(b)(1)(A).  <u>See</u> 696 F.3d at 1299. Additionally, to the extent that the defendant argued that the evidence was admissible to demonstrate the victim's level of intoxication on the night of the incident, the Tenth Circuit held that the district court properly excluded the evidence under rule 412(a).  <u>See</u> 696 F.3d at 1299. The Tenth Circuit explained that the district court had "legitimate reasons to perceive that [defendant] Pablo sought to introduce this evidence for . . . impermissible purposes, arguing apparently that her intoxication enhanced her predisposition toward casual sex." 696 F.3d at 1299.

In <u>United States v. Pablo</u>, the district court also excluded the defendant's evidence that, on the night of the rape, the victim made sexual advances toward his co-defendant, "namely, caressing his leg and penis through his pants and trying to kiss him." 696 F.3d at 1299-1300. The defendant asserted that the victim made a sexual advance on the co-defendant "a significant period of time before the rape occurred," while the victim and the co-defendant were riding in a car with others on the night in question. 696 F.3d at 1299-1300, 1300 n.22. The defendant and co-defendant were accused of kidnapping the victim and raping her, in a separate car, later that night. <u>See</u> 696 F.3d at 1284-86. On appeal, the defendant argued that the exclusion of this evidence violated his due process right to present a defense. Although the Tenth Circuit reviewed the district court's exclusion of the evidence under a plain error standard, because the defendant had not raised a 412(b)(1)(C) argument before the district court, the Tenth Circuit determined that the evidence had little probative value regarding the victim's consent, because the alleged sexual advances occurred "some time before the alleged rape and in a different location from where the rape occurred." 696 F.3d at 1300-01. Additionally, the defendant was allowed to present other evidence at trial regarding the victim's consent, including that the victim's boyfriend became jealous of the co-defendant when the victim and the co-defendant spoke at the dance. <u>See</u> 696 F.3d at 1301.

The Court previously has allowed, in accordance with rule 412, limited discovery regarding victims' social history in a Title VII civil rights matter. In <u>United States v. Board of County Commissioners of the County of Dona Ana</u>, the Court allowed defendants accused of discrimination and sexual harassment to question the victims whether they had dated co-workers, and if they had dated co-workers, which co-workers the victims had dated. <u>See</u> 2010 WL 1141362, at *6. The Court did not allow the defendants to inquire into the victims' sexual relationships. <u>See</u>

2010 WL 1141362, at *6-7.  The Court explained that a limited line of questioning regarding the victims' dating history would not violate the policy rationales underlying rule 412 and would not implicate the victims' sexual predisposition, because a dating relationship is not necessarily equated with a sexual relationship.  See 2010 WL 1141362, at *5-6.

In United States v. Harry, No. CR 10-1915 JB, 2013 WL 3270986 (D.N.M. June 3, 2013) (Browning, J.), the Court excluded evidence that the victim was seen sitting beside, touching, and hugging the defendant throughout the night of her alleged rape, as well as evidence of the victim's dress.  See 2013 WL 3260986, at *13.  The Court concluded that this evidence's sole relevance was "to demonstrate that Doe had a sexual predisposition towards casual sex." 2013 WL 3260986, at *13.  The Court also excluded a text message sent from Harry the morning after the incident that "would inform the jury of nothing more than that Doe was flirting with Harry the night of the incident." 2013 WL 3260986, at *16.  More recently, in United States v. Begay, No. CR 14-0747 JB, 2020 WL 2514661 (D.N.M. May 15, 2020)(Browning, J.), the United States sought to prohibit evidence concerning two minor victim's sexual behavior or predisposition.  See 2020 WL 2514661, at *26.  The Court concluded that, because the victims were too young to legally consent, evidence of their sexual behavior with regard to the defendant was irrelevant and inadmissible. See 2020 WL 2514661, at *26.

## 2.    **Law Regarding Rule 412 and a Victim's Chastity or Virginity.**

The question whether rule 412 extends to evidence concerning a victim's chastity or virginity is more fraught.  Federal courts differ whether rule 412 proscribes the admission of evidence concerning a victim's chastity or virginity.  The Court provides an overview of certain key federal decisions.

First, in <u>Virgin Islands v. Jacobs</u>, 634 F. Supp. 933 (D.V.I. 1986)(O'Brien, J.)("<u>Jacobs</u>"), the Honorable David V. O'Brien, United States District Judge for the United States District Court for the District of the Virgin Islands, determined, among other things, that rule 412's "ban on sexual conduct evidence embraces evidence of the lack of it -- virginity . . ."  634 F. Supp. at 937. The defendant in <u>Jacobs</u> was charged with thirty-seven counts of rape, two counts of sodomy, and one count of unlawful possession of a firearm after he repeatedly had sexual intercourse with his girlfriend's 12-year-old daughter over a period of two years.  <u>See</u> 634 F. Supp. at 935.  At trial, the prosecutor asked the victim if she had ever had sex with anyone before Jacobs, to which she replied "No." 634 F. Supp. at 935.  The jury convicted Jacobs.  <u>See</u> 634 F. Supp. at 935.  Jacobs then filed a petition under 18 U.S.C. § 2255.  <u>See</u> 634 F. Supp. at 936.  In his § 2255 petition, Jacobs alleged, among other things, that the trial court erred in permitting the testimony regarding the victim's chastity, because such testimony is inadmissible under rule 412.  <u>See</u> 634 F. Supp. at 937.  Judge O'Brien agreed with Jacobs' arguments, reasoning:

> Jacobs' assertion that the ban on sexual conduct evidence embraces evidence of the lack of it -- virginity -- is correct because it is likely to provoke equally unfair prejudice.  *E.g.*, *State v. Gavigan*, 111 Wis. 2d 150, 330 N.W. 2d 571, 576 (1983).  We also agree that the Rule 412 proscriptions apply equally to the Government because the language of the rule neither restricts its force to the defendant nor provides the accused with the right to rebut Rule 412 evidence introduced by the prosecution.  A de jure conflict with the accused's right to confrontation would be evident if the restrictions applied solely to the defendant. No such infirmity arises when both sides are precluded from introducing such prejudicial evidence.  *Gavigan*, *supra* 330 N.W. 2d at 576; *Johnson v. State*, 146 Ga. App. 277, 246 S.E. 2d 363, 365–66 (1978).  *But see People v. Johnson*, 671 P.2d 1017, 1020 (Colo. Ct. App. 1982).  We conclude, therefore, that the admission of the victim's remarks concerning her virginity was erroneous . . . .

<u>Jacobs</u>, 634 F. Supp. at 937.

Several years later, in <u>United States v. Powell</u>, 226 F.3d 1181 (10th Cir. 2000)("<u>Powell</u>") the United States Court of Appeals for the Tenth Circuit affirmed a district court's decision to

exclude evidence regarding a victim's prior sexual experience.  See 226 F.3d at 1166.  Powell was

charged with kidnapping for sexual gratification, contact, exploitation, and assault, after

kidnapping and sexually assaulting a thirteen-year-old girl.   See 226 F.3d at 1184.  Evidently,

Powell anticipated that the United States would offer evidence concerning the victim's sexual

inexperience, and as a result, before trial he "notified the trial court of his intention to introduce

evidence of Jane Doe's past sexual behavior pursuant to Rule 412(b)(1)(C), on the grounds that its

exclusion would violate his constitutional rights."   226 F.3d at 1197.   Specifically, Powell

indicated his intention to call two witness who would testify they had seen the victim sexually

touch other men in the past.  See 226 F.3d at 1197.  The trial judge was inclined to permit the

testimony, reasoning that it "would be something that the defendant should offer as evidence

because I think the Government would be opening that door based on the way it's presenting the

case." 226 F.3d at 1197.  Nevertheless, the trial judge deferred making a ruling "until he had heard

[the victim's] testimony, and he warned the prosecution that 'if it turns out that the Government

has portrayed [the victim] in a way that is totally inconsistent with this incident, then I'm

inclined . . . to let [the defendant] provide evidence . . . ."  226 F.3d at 1197.  After hearing the

victim's testimony, the trial judge decided to exclude the testimony regarding her prior sexual

conduct, explaining: "I just don't believe that given the substance of [the victim's]

testimony . . . that there's been any testimony presented that would provide a springboard or basis

upon which this Court could properly allow the jury to hear the two instances of 412 evidence the

defendant wishes to offer . . . ."  226 F.3d at 1198.

The Tenth Circuit affirmed, explaining:

In conducting this inquiry, we conclude that the trial judge's exclusion of
the defendant's proffered testimony did not violate the defendant's rights under the
Fifth and Sixth Amendments.   Defendant sought admission of his proffered

evidence on two grounds: first, "in support of his defense that [the victim] consented"; and second, "to rebut inferences that [she] was sexually naive, innocent, and unsophisticated prior to her alleged kidnapping."   Appellant's Opening Brief, at 31; 1 R., Doc. 65.  Applying the *Richmond* test, we conclude that the testimony proffered by the defendant is, at best, only marginally relevant.  We are unpersuaded by the suggestion that facts to which the proffered witnesses would testify -- that [Jane] earlier touched men in a sexually inappropriate manner -- is relevant to a determination as to whether she consented to travel with the defendant or to having sexual contacts with him on the occasions in question here.  White Buffalo, 84 F.3d at 1054.  We likewise believe that the relevance of [her] alleged conduct to rebut any inference the jury may have drawn regarding her sexual naivety is too attenuated, particularly in light of *Richmond*'s charge that we must balance the government's interest in excluding the proffered evidence against the defendant's interest in its admittance.  As we noted in Ramone, 218 F.3d at 1235, Rule 412 "supports important interests implicated in sexual assault cases," including safeguarding the victim "against invasion of privacy, potential embarrassment, and stereotyping."  Given the nature of these important governmental interests, we are unable to conclude that the defendant's interest in admitting the proffered testimony is sufficiently weighty to warrant finding a constitutional violation.

Powell, 226 F.3d at 1199 (second alteration in original).

Next, in Blue Bird, 372 F.3d 989, the United States Court of Appeals for the Eighth Circuit concluded that testimony regarding a victim's virginity was irrelevant and inadmissible under rule 412.  See 372 F.3d at 995.  Blue Bird was charged with sexual abuse of minor after he had sexual intercourse with a thirteen-year-old girl.   See 372 F.3d at 991.  At trial, the victim testified that she was a virgin before Blue Bird sexually abused her.  See 372 F.3d at 991.  Blue Bird appealed the admissibility of that testimony, among other testimony and evidence.  See 372 F.3d at 991. The Eighth Circuit concluded that the trial court erred in allowing the testimony, explaining:

During direct examination of the minor in this case, the government elicited testimony that she was a virgin when she had sexual intercourse with Mr. Blue Bird. We note first that evidence of the prosecuting witness's virginity was irrelevant to the case.  The witness's sexual proclivities were not at issue, and the government has failed to provide a convincing argument for how any legally relevant inferences could be drawn from her virginity.  The testimony did not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable."  *Cf.* Fed. R. Evid. 401.  In addition to the

fact that irrelevant evidence is not admissible, Fed. R. Evid. 402, allowing the government to suggest that Mr. Blue Bird somehow "robbed" the prosecuting witness of her virginity is unduly prejudicial given the fact that it was not probative on any relevant issue, *see* Fed. R. Evid. 403.

Furthermore, testimony of the prosecuting witness's virginity is inadmissible under Federal Rule of Evidence 412. That rule prohibits the introduction of evidence of an alleged victim's prior sexual conduct in a sex offense case except in narrowly defined circumstances. *See* Fed. R. Evid. 412. The minor's testimony clearly does not fall into any of these categories. The text of the rule itself does not limit the prohibition on introducing such evidence to the defendant, and we do not believe that the government is exempted from its strictures. One of the purposes of the rule is to encourage the victims of sexual crimes to come forward, free from the fear that their sexual history will be gratuitously exposed in court. This policy would be undermined if the government were free to produce such evidence. We also believe that the prohibition on evidence of "sexual behavior" includes chaste sexual behavior. *Cf. . . . Jacobs*, 634 F. Supp. . . . [at] 937 . . . . If the defendant in such a case is prohibited from playing on the potential prejudices of a jury by introducing evidence of the alleged victim's promiscuity, the government should also be forbidden to play on potential prejudices by introducing evidence of the alleged victim's chastity. *Cf. United States v. Duran*, 886 F.2d 167, 169 (8th Cir. 1989).

Blue Bird, 372 F.3d at 995.

By contrast, in <u>D.C. v. Hasratian</u>, No. 14-cv-0175 JNP-EJF, 2018 WL 587865 (D. Utah January 26, 2018)(Parrish, J.)("<u>Hasratian</u>"), the Honorable Jill N. Parrish, United States District Judge for the United States District Court for the District of Utah, concluded that rule 412 does not prohibit the admission of evidence concerning a victim's chastity or virginity. <u>See</u> 2018 WL 867865, at *2. Judge Parrish explains:

The first category of evidence described in subdivision (a)(1) does not apply to Plaintiff's virginity. The absence of sexual activity is not evidence that the "victim engaged in other sexual behavior." The language of the second category of evidence laid out in subdivision (a)(2), however, is ambiguous as applied to evidence of a victim's virginity. The phrase "victim's sexual predisposition" can be read to mean the victim's predisposition to engage in sexual activity. It can also be interpreted to mean the victim's predisposition regarding sex. The latter construction is broad enough to include evidence of both a predisposition toward sexual activity and a predisposition not to engage in sexual activity -- i.e., virginity.

- 19 -

The Defendants cite a Virgin Islands criminal case to suggest that a victim's virginity should be excluded under Rule 412.   [*Jacobs*], 634 F. Supp. . . . [at] 937 . . . .   But other courts that have interpreted similar rules of evidence have held that the virginity of a victim is not specifically prohibited, and thus should be allowed.   *See, e.g.*, *Marcum v. State*, 771 S.W. 2d 250, 253 (Ark. 1989); *People v. Johnson*, 617 P.2d 1017, 1020 (Colo. App. 1983).

In the absence of any binding authority on this issue, the court looks to the advisory committee notes for Rule 412 to determine whether these notes may be of assistance in resolving the ambiguity in subdivision (a)(2).   *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 509 (1989)(when the text of a rule of evidence is ambiguous, courts should "seek guidance from legislative history and from the Rules' overall structure.").   These notes clearly state that Rule 412's objectives include "safeguard[ing] the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details" as well as encouraging victims "to institute and to participate in legal proceedings against alleged offenders."   Fed. R. Evid. 412, Advisory Committee Notes, 1994 Amendments.   In particular, the reasons for extending the rule to civil cases are "to protect alleged victims against invasions of privacy, potential embarrassment, and unwarranted sexual stereotyping, and . . . to encourage victims to come forward when they have been sexually molested."   *Id.* The advisory committee notes also specifically speak to the purpose of the "sexual predisposition" language found in subdivision (a)(2).   The advisory committee remarked that this language was designed to exclude evidence "relating to the alleged victim's mode of dress, speech, or life-style" because "[a]dmission of such evidence would contravene Rule 412's objectives of shielding the alleged victim from potential embarrassment and safeguarding the victim against stereotypical thinking."   *Id.* The purpose of subdivision (a)(2) was to exclude evidence that "may have a sexual connotation for the factfinder."   *Id.*

Thus the purpose of Rule 412 in general, and subdivision (a)(2) in particular, is clear.   The rule is meant to protect the alleged victim from cross-examination on subjects of questionable relevance, including past sexual behavior and sexual predisposition, such as "mode of dress, speech, or life-style."   Defendants, however, seek a reading of the phrase "sexual predisposition" that would run counter to this purpose.   They interpret rule 412 as permitting the alleged perpetrator of sexual misconduct to use the rule offensively to silence the alleged victim and prevent him from producing relevant evidence regarding his virginity at the time of the sexual misconduct, which relates to the issue of damages.   "But [courts] will not lightly assume that . . . ambiguous language [in a rule of evidence] means anything so inconsistent with the Rule's underlying theory."   *Williamson v. United States*, 512 U.S. 594, 600 (1994).

The court, therefore, interprets the phrase "sexual predisposition" in Rule 412 to refer to evidence that may suggest a predisposition toward sexual activity or

that "may have a sexual connotation for the factfinder."  Fed. R. Evid. 412, Advisory Committee Notes, 1994 Amendments.  Thus, evidence of Plaintiff's virginity at the time of the sexual misconduct is not prohibited by the rule.

Hasratian, 2018 WL 587865, at *1-2.

Conversely, in United States v. Olson, No. ARMY 20190267, 2021 WL 1235923 (Army Ct. Crim. App. April 1, 2021)("Olson"), the United States Army Court of Criminal Appeals concluded that rule 412(a) of the Military Rules of Evidence[6] prohibits the admission of evidence concerning a victim's virginity or chastity.  See 2021 WL 1235923, at *6.  Olson was charged after he sexually assaulted and penetrated an Army Specialist in Army barracks.  See 2021 WL 1235923, at *1-3.  At trial, the victim testified, over Olson's objection, that the assault made her feel "disgusted," because she "did not want to lose [her] virginity like that."  2021 WL 1235923, at *4.  Two other witnesses also testified that the victim lost her virginity during the assault.  See 2021 WL 1235923, at *4.  During closing argument, the prosecution argued that "it is unreasonable to believe she would have consented, given the evidence in this case.  They are strangers, in fact,

---

[6]Rule 412(a) of the Military Rules of Evidence is nearly identical to rule 412(a) of the Federal Rules of evidence.  It reads:

**(a)    Evidence generally inadmissible**

The following evidence is not admissible in any proceeding involving an alleged sexual offense except as provided in subdivisions (b) and (c):

(1)     Evidence offered to prove that a victim engaged in other sexual behavior;

or

(2)     Evidence offered to prove a victim's sexual predisposition.

Mil. R. Evid. 412(a) (bold in original).

she's a virgin.  You heard how she described it.  'I'm not a virgin anymore. This isn't how I wanted

to lose my virginity.'"  2021 WL 1235923, at *4 (no citation given for internal quotation).

On appeal, the Army Court of Criminal Appeals concluded that the military judge abused

her discretion permitting the testimony regarding the victim's virginity.  See 2021 WL 1235923,

at *4.  The Army Court of Criminal Appeals explains:

> We do not agree with the government's argument that the victim's virginity is not
> evidence of sexual predisposition.  The choice not to engage in sexual intercourse
> is as much a sexual predisposition as someone who has particular sexual
> proclivities.  See [Blue Bird], 372 F.3d . . . [at] 995 . . . ("[T]estimony of the
> prosecuting witness's virginity is inadmissible under Federal Rule of Evidence
> 412.").  Moreover, by its plain text, Mil. R. Evid. 412 applies equally to the
> government as it does to an accused.  Consequently, if an accused is prohibited
> from presenting evidence of a victim's lack of chastity to prove consent, it stands
> to reason that the government should not be able to assert the victim's chastity, in
> and of itself, as a means to prove lack of consent.  See [Bluebird], 372 F.3d at 995
> (citation omitted)("If the defendant in such a case is prohibited from playing on the
> potential prejudices of a jury by introducing evidence of the alleged victim's
> promiscuity, the government should also be forbidden to play on potential
> prejudices by introducing evidence of the alleged victim's chastity.").

Olson, 2021 WL 1235923, at *5.  The court also explains that, even if it had determined that rule

412 did not prohibit the admission of the testimony about the victim's virginity, it would have

excluded the testimony as irrelevant or unduly prejudicial.  See Olson, 2021 WL 1235923, at *5-6.

Finally, and most recently, in United States v. Pulido, No. 20-cr-0292 VMC-CPT, 2022

WL 562351 (M.D. Fla. February 23, 2022)(Covington, J.)("Pulido"), the Honorable Virginia M.

Hernandez Covington, United States District Judge for the United States District Court for the

Middle District of Florida, concluded that rule 412 does not apply to evidence of a victim's chastity

or virginity.  See 2022 WL 562351, at *6.  Pulido was charged with various sex crimes, including

enticement and coercion, in connection with his sexual relationship with a fifteen-year-old.  See

2022 WL 562351, at *1.  Pulido met the victim, a Croatian national, online.  See 2022 WL 562351,

- 22 -

at *3.  Their relationship started relatively platonically -- Pulido taught the victim how to play

guitar -- but escalated to sexually explicit messages and video calls.  See 2022 WL 562351, at *3.

Eventually Pulido flew to Croatia and the two engaged in sexual intercourse.  See 2022 WL

562351, at *3.  At trial, the victim's sexual inexperience came up "several times."  2022 WL

562351, at *4.  The jury convicted Pulido, and he moved for a new trial. See 2022 WL 562351, at

*3.

In determining that rule 412 does not reach evidence concerning a victim's virginity, Judge

Covington summarizes Judge Parrish's opinion in Hasratian.  See 2022 WL 562351, at *5-6 (citing

Hasratian, 2018 WL 587865, at *1-2).  Judge Covington adds:

> Moreover, the gravamen of the charges in this case centered around Pulido having
> sex with a child who was 15 years old and Jimenez's participation in the conspiracy
> to transport I.G. to Florida so that Pulido could continue having sex with her.  This
> evidence was probative of Pulido's enticement or coercion of I.G. to engage in
> illicit sexual activity.  What's more, in light of the evidence as a whole, the Court
> does not believe that the probative value of the evidence elicited by the government
> on this point was substantially outweighed by the danger of unfair prejudice to
> Defendants.  Accordingly, the testimony elicited by the government about I.G.'s
> sexual inexperience prior to meeting Pulido does not warrant a new trial.

Pulido, 2022 WL 562351, at *6.

## LAW REGARDING RULES 401 AND 402 OF THE FEDERAL RULES OF EVIDENCE

"The rules of evidence contemplate the admission of relevant evidence, and the exclusion

of irrelevant and potentially prejudicial evidence."  Train v. City of Albuquerque, 629 F. Supp. 2d

1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402 & 403).  "Relevant

evidence is evidence that has a tendency to make the existence of any fact that is of consequence

to the determination of the action more probable or less probable than it would be without the

evidence."  United States v. Gutierrez-Castro, No. CR 10-2072 JB, 2011 WL 3503321, at *3

(D.N.M. Aug. 6, 2011)(Browning, J.)(citing Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has

any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.")).  "The standard for relevancy is particularly loose under rule 401, because '[a]ny more stringent requirement is unworkable and unrealistic.'" United States v. Ganadonegro, 854 F. Supp. 2d 1088, 1127 (D.N.M. 2012)(Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's note).  Irrelevant evidence, or that evidence which does not make a fact of consequence more or less probable, however, is inadmissible.  See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

### LAW REGARDING RULE 404(b) OF THE FEDERAL RULES OF EVIDENCE

Under rule 404(b) of the Federal Rules of Evidence, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  The reason for this rule is not that evidence of other crimes is not relevant or probative, but that it is too probative; it violates the Anglo-American principle that a defendant should be tried only for the crime with which he is charged.  See, e.g., People v. Zackowitz, 254 N.Y. 192, 172 N.E. 466, 468 (1930) (Cardozo, J.).  The Court can admit that sort of evidence, however, "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  "In other words, one cannot present evidence the relevance of which is based on the forbidden inference: the person did X in the past, therefore he probably has a propensity for doing X, and therefore he probably did X this time, too."  Wilson v. Jara, No. CIV 10-0797, 2011 WL 6739166, at *5 (D.N.M. Nov. 1, 2011)(Browning, J.).

The Supreme Court has enunciated a four-part process to determine whether evidence is admissible under rule 404(b).  See Huddleston v. United States, 485 U.S. at 691-92.  The Tenth Circuit has consistently applied that test:

To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test: (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000)("Zamora")(citing United States v. Roberts, 185 F.3d 1125 (10th Cir. 1999)).  See United States v. Higgins, 282 F.3d 1261, 1274 (10th Cir. 2002); United States v. Hardwell, 80 F.3d 1471, 1488 (10th Cir. 1996)(citing Huddleston v. United States, 485 U.S. at 691-92).

When bad-act evidence is both relevant and admissible for a proper purpose, "the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the bad act." United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999)(alterations omitted).  The Tenth Circuit has also stated that district courts must "identify specifically the permissible purpose for which such evidence is offered and the inferences to be drawn therefrom." United States v. Youts, 229 F.3d 1312, 1317 (10th Cir. 2000)(citing United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985)).  "[A] broad statement merely invoking or restating Rule 404(b) will not suffice." United States v. Youts, 229 F.3d at 1317.  Rules 401-403 and the conditional relevancy rules in rule 104(b) govern the applicable burden the government must meet to successfully offer evidence under rule 404(b).  See Huddleston v. United States, 485 U.S. at 686-91.

The Advisory Committee added notes to rule 404(b) when the Advisory Committee amended the rule in 2020:

**2020 Amendments**

Rule 404(b) has been amended principally to impose additional notice requirements on the prosecution in a criminal case. In addition, clarifications have been made to the text and headings.

The notice provision has been changed in a number of respects:

•     The prosecution must not only identify the evidence that it intends to offer pursuant to the rule but also articulate a non-propensity purpose for which the evidence is offered and the basis for concluding that the evidence is relevant in light of this purpose.  The earlier requirement that the prosecution provide notice of only the "general nature" of the evidence was understood by some courts to permit the government to satisfy the notice obligation without describing the specific act that the evidence would tend to prove, and without explaining the relevance of the evidence for a non-propensity purpose.  This amendment makes clear what notice is required.

•     The pretrial notice must be in writing -- which requirement is satisfied by notice in electronic form.  See Rule 101(b)(6).  Requiring the notice to be in writing provides certainty and reduces arguments about whether notice was actually provided.

•     Notice must be provided before trial in such time as to allow the defendant a fair opportunity to meet the evidence . . . .

Fed. R. Evid. 404(b) Advisory Committee Notes 2020 Amendments.  See United States v. Ferguson, No. 4:19-CR-3121, 2020 WL 5849683, at *1 (D. Neb. October 1, 2020)(Gerrad, J.)("The government must also articulate the permitted purpose for the evidence and the reasoning supporting the purpose, and do so in writing before trial.").

## ANALYSIS

The Court denies the MIL.  The Court's analysis proceeds in two steps.  First, the Court determines that rule 412 applies to evidence concerning a victim's virginity or chastity.  Second, the Court concludes that, although rule 412 applies to evidence regarding a victim's virginity or chastity, rule 412 does not apply here, because the United States is not offering the text messages to prove that Doe engaged in other sexual behavior or Doe's sexual predisposition.  For these

reasons the Court will admit all the text messages between Bindues and Doe, including those in which Bindues and Doe discuss Doe's sexual experiences and those in which Bindues and Doe discuss Doe's virginity.

## I.     RULE 412 APPLIES TO EVIDENCE CONCERNING A VICTIM'S VIRGINITY OR CHASTITY.

The Court determines that rule 412 applies to evidence concerning a victim's virginity or chastity.  Having summarized the conflict among various federal courts on this issue, the Court joins the courts that have determined that rule 412 applies to evidence concerning a victim's virginity or chastity.  See Jacobs, 634 F. Supp. at 937; Blue Bird, 372 F.3d at 995; Olson, 2021 WL 1235923, at *5.  Three considerations support the Court's conclusion.  First, rule 412's plain text encompasses virginity and chastity evidence.  Second, reading rule 412 to apply to virginity evidence advances the policy goals that underly rule 412, namely protecting victims from undue invasions of privacy, embarrassment, and stereotyping.  Finally, reading rule 412 to apply to virginity evidence reduces the risk that virginity evidence will mislead juries.  The Court explains these three considerations in greater detail.

First, rule 412's plain text applies to evidence concerning virginity.  Rule 412 applies to evidence "offered to prove a victim's sexual predisposition."  Fed. R. Evid. 412(a)(2). "Predisposition" means "[a] person's inclination to engage in a particular activity . . . ." Predisposition, Black's Law Dictionary (11th ed. 2019).  "Predisposition" indicates a "susceptibility" to do something.  Predispose, Merriam-Webster Dictionary (Online Ed.), https://www.merriam-webster.com/dictionary/predisposition#dictionary-entry-1 (last visited April 29, 2023). On its face, the word "predisposition" does not imply an inclination one way or another: a person can be susceptible to engage in a particular activity just as much as that person

can be susceptible not to engage in that same activity.   Indeed, an arachnologist and an arachnophobic both have a predisposition regarding holding a spider: the former is inclined to hold a spider, while the latter is not inclined to hold a spider.   It follows that the phrase "sexual predisposition" encompasses both a person's inclination to engage in sexual activity and a person's inclination not to engage in sexual activity.   The second half of that definition -- an inclination not to engage in sexual activity -- implicates virginity.   See Hasratian, 2018 WL 587865, at *1 ("[A] predisposition not to engage in sexual activity -- i.e., virginity.").   For these reasons, the Court determines that rule 412(a)(2)'s plain text applies to virginity and chastity evidence.

Second, the Court's conclusion that rule 412 applies to evidence regarding a victim's virginity advances the policy goals underlying rule 412.   As the Court explained in greater detail above, rule 412 promotes two policy objectives: (i) encouraging victims to report sexual assaults; and (ii) protecting victims "against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details . . . ."  Fed. R. Evid. 412 advisory committee's note to the 1994 amendments.   See Wright & Graham, supra § 5384, at 544.   The Court's decision that rule 412 applies to virginity evidence advances rule 412's second policy goal, by safeguarding victims from "the invasion of privacy, potential embarrassment and sexual stereotyping" that sometimes is associated with virginity and virginity loss, particularly when it comes to younger people like Doe.   Fed. R. Evid. 412 advisory committee's note to the 1994 amendments.   To start, virginity, like sexual activity, is deeply personal.   It is an aspect of one's sexual and intimate history, that many keep private.   It follows that reading rule 412 to apply to virginity evidence protects victims from being compelled to disclose personal and private information regarding their virginity.

Additionally, reading rule 412 to apply to virginity evidence protects victims from the embarrassment that might accompany disclosure of one's status as a virgin or non-virgin. See Fed. R. Evid. 412 advisory committee's note to the 1994 amendments. Public opinions regarding virginity are varied. See Laura M. Carpenter, Gender and the Experience of Virginity Loss in the Contemporary United States, 16 Gender and Soc'y 345 (2002)(explaining results of a study of young people and their views on and experiences with virginity and virginity loss)("Gender and Virginity"); Hanne Blank, Virgin: An Untouched History 217-49(2016)("Untouched History")(describing the evolving and varied understandings of virginity in the twenty-first century). Some view virginity as a "gift," a "nonrenewable" quality that should be protected until a person finds a committed and loving partner. Gender and Virginity at 351-52. For many, that view is grounded in religious teachings and beliefs. See Untouched History at 127-45. By contrast, others view virginity as a failure, a "stigma[tized]" shortcoming that should be "expunge[ed] . . . preferably as soon as possible." Gender and Virginity at 352-53. Others view virginity neutrally and think of virginity loss as "a step in the longer process of growing up." Gender and Virginity at 353. Ultimately, a person's views on virginity depend greatly on his or her immutable characteristics like age, gender, and sexuality, as well as other variables like religion. See Gender and Virginity at 351-62. Given that popular opinions concerning virginity are so varied, a victim might feel embarrassed to discuss publicly their virginity or virginity loss, because he or she cannot predict how the fact finder will receive that disclosure. A victim who is a virgin might worry that a jury will judge him or her for not having had sex, and ridding him or herself of the "stigma" associated with virginity. Gender and Virginity at 352-53. Conversely, a victim who is not a virgin might worry that a jury will judge him or her for losing his or her virginity too late, too early, to the wrong person, or under the wrong circumstances. Accordingly,

in concluding that rule 412 applies to virginity, the Court protects victims from the self-consciousness and embarrassment that might accompany testifying about one's virginity.

Further, reading rule 412 to apply to chastity evidence also protects victims from sexual stereotyping. See Fed. R. Evid. 412 advisory committee's note to the 1994 amendments. Because there are many popularly held opinions on virginity, there are also many prominent stereotypes of virgins, some positive and some negative. Gender and Virginity at 351-53. For example, one common stereotype portrays virgins as pure, innocent individuals. This stereotype casts virgins in a positive light and suggests that virgins are angelic beings who have avoided carnal vices. By contrast, another popular stereotype portrays virgins as undesirable outcasts. This stereotype places virgins in a negative light and suggests that virgins are asexual, immature, or romantically unwanted. Indeed, Doe's texts to Bindues indicate that she was afraid of being labeled with this stereotype. See MIL Response at 9, 11 (citing text messages in which Doe expresses concern that Bindues would think she is "immature," a "child," or "inexperienced" for "not ever having sex"). Both of these stereotypes are popularly consumed. See, e.g., Jane the Virgin (Poppy Productions 2014)(fictional television show about a young, rule-abiding, virgin woman who becomes pregnant through an accidental artificial insemination); The 40-Year-Old Virgin (Universal Pictures 2005)(fictional film chronicling the life of an introverted, awkward, forty-year-old man as he tries to lose his virginity). Accordingly, in concluding that rule 412 applies to virginity evidence, the Court protects victims from the risk of being stereotyped -- either positively or negatively -- for being a virgin or non-virgin. In so doing, the Court also limits the risk that a juror's preconceived notions regarding virginity cloud the juror's decision-making.

Third, and finally, the Court's conclusion that rule 412 applies to evidence regarding a victim's virginity reduces the risk of misleading juries. Virginity is typically associated with

penetrative sex.[7]  See Gender and Virginity at 348.  Sexual activity, however, encompasses more

than just penetrative sex.[8]  Accordingly, the "virgin" label runs the risk of understating a person's

_____

[7]The Court acknowledges that this definition of "virginity" is contested.  See Untouched History at 4 ("In truth, however, everyone assuredly does not know what makes one person a virgin and another person not one . . . And this state of affairs is nothing new."); id. at 9 ("[V]irginity does not truly have any single ironclad definition and never has.").  The meaning of "virginity" varies across cultures and religions.  See Untouched History at 11-18.  Virginity loss also manifests differently in heterosexual relationships than it does in homosexual relationships.  See Untouched History at 10 (explaining that the traditional definition of "virginity" is premised on heterosexual sexual activity).  The Court recognizes these nuances, but uses the traditional definition of virginity here -- i.e., no experience with penetrative, penial-vaginal sex -- because it is the traditional definition, the definition that is most widely used, and the definition that best applies to this case's facts.


[8]The Court acknowledges that the definition of "sex" -- and related terms like "sexual activity" and "sexual relations" -- is just as fraught as the definition of "virginity."  Variations in the meaning of "sex" famously came to the forefront of national news in 1998, during the Clinton-Lewinsky scandal.  See Peter Tiersma, The Language of Perjury (Focusing on the Clinton Impeachment), http://www.languageandlaw.org/PERJURY.HTM (last visited May 3, 2023)("Clinton Impeachment").  On January 17, 1998, during a deposition for a lawsuit that Paula Jones brought, President William Jefferson Clinton denied having "sexual relations" with Monica Lewinsky, a White House intern.  See Clinton Impeachment.  It later came to light that Lewinsky had performed oral sex on President Clinton.  See Clinton Impeachment.  Later, when testifying before the Grand Jury, President Clinton maintained that his statement that he had never had "sexual relations" with Lewinsky was truthful, because he thought that the definition of "sexual relations" to which the parties had stipulated in the Jones lawsuit encompassed performing oral sex, but not receiving oral sex.  See Clinton Impeachment (quoting the transcript of President Clinton's Grand Jury testimony, which is available in full at https://www.cbsnews.com/news/text-of-clinton-testimony/ ("Clinton Grand Jury Tr.").
    Similarly, on January 7, 1998, Lewinsky submitted an affidavit in which she states: "I have never had a sexual relationship with the President."  Clinton Impeachment (quoting Lewinsky's affidavit, which is available in full at https://www.cnn.com/ALLPOLITICS/1998/03/16/jones.clinton.docs/monica.lewinsky.affidavit/ ("Lewinsky Aff.")).  President Clinton defended the veracity of the Lewinsky Aff., explaining: "I believe at the time that she filled out this affidavit, if she believed that the definition of sexual relationship was two people having intercourse, then this is accurate.  And I believe that is the definition that most ordinary Americans would give it."  Clinton Impeachment (quoting Clinton Grand Jury Tr.).
    The Court acknowledges the nuances in the meaning of "sex."  Here, the Court uses the term "penetrative sex" to refer to penetrative, penial-vaginal intercourse.  The Court uses the term "sexual activity" to refer to other sexual acts that do not involve penial-vaginal penetration, like oral sex and digital sex.

sexual experience if that person has engaged in some sexual activities, but not penetrative sex.  A person who has given oral sex, but never engaged in penetrative sex, for example, could fairly be called a virgin.[9]  Yet labeling that person as a virgin also could create the false impression that the person has never engaged in any sexual activity whatsoever.  It would be difficult, if not impossible, to combat that false impression, because rule 412 prohibits questioning that would elucidate that the person had engaged in oral sex.  Thus, reading rule 412 to exclude evidence of a victim's sexual experience, but not of a victim's chastity, creates the risk of misleading a jury into believing that a victim is less sexually experienced than that victim actually is.

This case is a textbook example of that risk.  Here, the Court is faced with over 17,000 text messages between Bindues and Doe.  See MIL Response at 1.  In some of those text messages, Doe discusses her virginity.  See MIL Response at 3-5.  In other messages, Doe provides a comprehensive overview of her sexual history, which does not include penetrative sex, but includes other sexual activity.  See MIL Response at 9-11.  If the Court reads rule 412 to apply to sexual activity, but not to virginity, it would exclude the text messages in which Doe details her sexual history, but admit the text messages in which Doe talks about her virginity.  That outcome would leave the jury with an "incomplete" and misleading picture of Doe's sexual experience.  MIL at 2-3.  It might create the false impression that Doe had no sexual experience prior to her relationship with Bindues.

---

[9]Members of Doe's generation might call a person who meets this definition a "technical virgin."  Technical Virgin, Urban Dictionary, https://www.urbandictionary.com/define.php?term=Technical%20Virgin (last visited May 2, 2023)(explaining that a "technical virgin" is someone who has not had "sexual intercourse," but "who has otherwise sexually gratified" others).

In the end, "sex" and "virginity" are related terms, but neither have a "single ironclad definition." Untouched History at 9. See supra notes 7 and 8. Accordingly, testimony regarding a victim's experience with sex and virginity is ripe for misunderstanding. Reading rule 412 to apply only to evidence regarding penetrative sex and other sexual activities, and not to evidence regarding virginity, only enhances the risk of misunderstanding. That reading permits testimony regarding a victim's virginity, but not testimony that could show nuance to the testimony regarding a victim's virginity. The Court determines that reading rule 412 to apply to sex and virginity evidence mitigates that risk. It ensures that a jury will not hear any evidence regarding a victim's "sexual predisposition," including the victim's predisposition toward and against penetrative sex and sexual activity.[10] Fed. R. Evid. 412. For these reasons, the Court concludes that rule 412 applies to evidence regarding a victim's virginity or chastity.

## II.   THE COURT WILL ADMIT THE TEXT MESSAGES BETWEEN BINDUES AND DOE, BECAUSE THE UNITED STATES IS NOT OFFERING THE TEXT MESSAGES TO PROVE DOE'S SEXUAL BEHAVIOR OR SEXUAL PREDISPOSITION.

The Court will admit all the text messages between Bindues and Doe -- including those in which Bindues and Doe discuss Doe's sexual experiences and virginity -- because the United States is not offering the messages to prove that Doe "engaged in other sexual behavior" or Doe's "sexual predisposition." Fed. R. Evid. 412(a). Rule 412(a) applies to evidence that is offered to prove that a victim "engaged in other sexual behavior" or a victim's "sexual predisposition." Fed. R. Evid. 412(a). It follows that rule 412 does not apply where evidence is offered for a non-

---

[10]In this case, the Court avoids the risk of misleading the jury by admitting all the text messages between Bindues and Doe, and not excluding both the messages where Doe discusses her sexual experiences and virginity. The Court explains its rationale for this decision in the next section.

propensity purpose, i.e., to prove something other than a victim's "other sexual behavior" or "sexual predisposition." Fed. R. Evid. 412(a). The non-propensity purpose, however, must be relevant, see Fed. R. Evid. 401, 402, and the risk of unfair prejudice that the evidence creates must not substantially outweigh its probative value, see Fed. R. Evid. 403. See Zamora, 222 F.3d at 762.

The Court draws this approach from caselaw concerning rule 404(b) of the Federal Rules of Evidence. See Zamora, 222 F.3d at 761-63. The Court determines that the Tenth Circuit's approach to rule 404(b) evidence is instructive here. Rule 404(b)(1) prohibits the admission of evidence of a witness' other bad acts to prove that the witness acted in conformity with the bad act. See Fed. R. Evid. 404(b)(1). Rule 404(b)(2), however, permits the admission of other-acts evidence where it is offered for a non-propensity purpose, like motive or intent. See Fed. R. Evid. 404(b)(2). In Zamora, the Tenth Circuit establishes that courts confronted with other-acts evidence should follow a four-part procedure:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

Zamora, 222 F.3d at 762 (quoting United States v. Roberts, 185 F.3d at 1141)(citing Huddleston v. United States, 485 U.S. at 691-92).

Here, evidence that Doe engaged in other sexual acts with people other than Bindues is similar to other-acts evidence. Such evidence could be used as propensity evidence to show that Doe was sexually promiscuous and that she acted in conformity with her promiscuity in her relationship with Bindues. Because the evidence at issue here is similar to 404(b) evidence, the

Court draws from Tenth Circuit 404(b) caselaw in its analysis here.  More specifically, the Court adapts the four-part test from Zamora for the rule 412 context.  See Zamora, 222 F.3d at 762.  First, the Court asks whether the evidence is offered for a proper purpose, i.e., to show something other than a victim's "other sexual behavior" or "sexual predisposition."  Fed. R. Evid. 412(a).  Second, the Court considers whether that non-propensity purpose is relevant.  See Zamora, 222 F.3d at 762.  Third, the Court "make[s] a Rule 403 determination of whether the probative value of the [evidence] is substantially outweighed by its potential for unfair prejudice."  Zamora, 222 F.3d at 762.  Finally, the Court assesses the need for a limiting instruction.  See Zamora, 222 F.3d at 762.

These principles indicate that the Court should admit the text messages at issue here.  First, the United States is offering the text messages for a proper, non-propensity purpose: that Bindues and Doe discussed sex and virginity.  See Zamora, 222 F.3d at 762; MIL Response at 6.  Neither the United States nor Bindues intend to use the text messages to show that Doe "engaged in other sexual behavior" or Doe's "sexual predisposition."  Fed. R. Evid. 412(a).  Second, the United States' non-propensity purpose is relevant, because it is probative of the United States' theory that Bindues groomed Doe for sexual activity.  See Zamora, 222 F.3d at 762; MIL Response at 6-7. The United States explains that its expert witness will testify that grooming is a multi-step process and that lowering inhibitions by discussing sex is one step in that process.  See MIL Response at 6-7.  Accordingly, text messages between Bindues and Doe in which Bindues and Doe discuss sex and virginity make it more probable that Bindues groomed Doe for sexual activity.  See Fed. R. Evid. 401.

Third, the text messages' probative value substantially outweighs the risk of unfair prejudice to Bindues.  See Zamora, 222 F.3d at 762; Fed. R. Evid. 403.  On one hand, the text messages are highly relevant to the United States' expert testimony and grooming theory.  See

MIL Response at 6-7.  On the other hand, the text messages create a minimal risk of prejudice.  As the Court explained at the hearing, it would be unfair to Bindues to show the jury only the text messages in which Doe states she is a virgin and not the text messages in which she details her prior sexual experiences.  See Tr. at 4:8-6:8 (Court).  That situation could create the unfair impression that Doe had no sexual experience whatsoever, and could leave the jury with an especially bad view of Bindues.  The risk of prejudice, however, is substantially lower if the Court admits all the text messages.  Allowing the jury to see all the text messages gives the jury a complete picture of Bindues' communications with Doe.  Indeed, admitting all of the text messages might be helpful to Bindues.  In the text messages, Doe tells Bindues that she is a virgin, but is sexually active.  Bindues may find that helpful in arguing that he thought that Doe was volunteering to have sex with him or send him nude photos, and that he did not coerce or induce her to have sex with him or send him nude photos.  The parties agree with that assessment and to admit all the text messages without redactions.  See Tr. at 6:19-8:6 (Court, Jones); id. at 8:7-17 (Court, Roybal).

Finally, the Court will issue a limiting instruction to further limit the risk of undue prejudice to Bindues.  See Zamora, 222 F.3d at 762; Fed. R. Evid. 105.  The Court will inform the jurors that they should not take the text messages as evidence of Doe's "other sexual behavior" or Doe's "sexual predisposition."  Fed. R. Evid. 412(a).  The Court will instruct the jury instead to take the text messages as evidence that Bindues and Doe discussed sex and virginity.

**IT IS ORDERED** that: (i) the Defendant's Motion *In Limine* to Preclude Evidence Regarding Jane Doe's Alleged Chastity or Lack of Sexual Experience, filed April 20, 2023 (Doc. 112), is denied; (ii) the Court will admit all the text messages between Defendant Johnathon Bindues and Jane Doe, including the text messages in which Bindues and Doe discuss Doe's past

sexual experience  and virginity, and (iii) the Court will give a limiting instruction informing the

jury to take the evidence only as proof that Bindues and Doe discussed sex and virginity, and not

as evidence of Doe's "other sexual behavior" or "sexual predisposition."

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alexander M. M. Uballez
   United States Attorney
Jaymie L. Roybal
Patrick Cordova
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

       *Attorneys for the Plaintiff*

Alexandra W. Jones
Jones Law Firm LLC
Albuquerque, New Mexico

       *Attorney for the Defendant*