## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                   No. CR 22-0466 JB

JOHNATHON BINDUES,

      Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Sealed Sentencing Memorandum, filed August 2, 2023 (Doc. 151)("Bindues Sentencing Memo.").[1]  The issues presented are: (i) whether Defendant Johnathon Bindues' base offense level is subject to a 5-level increase pursuant to § 4B1.5(b)(1) of the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."), because Bindues is a repeat and dangerous sex offender against minors; and (ii) whether Bindues' base offense level is subject to a 2-level decrease under U.S.S.G. § 3E1.1(a), because Bindues has accepted responsibility for his offense.  The Court concludes that: (i) Bindues' base offense level is subject to a 5-level increase pursuant to U.S.S.G. § 4B1.5(b), because Bindues engaged in a pattern of prohibited sexual conduct with Jane Doe, a minor; and (ii) Bindues is not eligible for a 2-level reduction under U.S.S.G. § 3E1.1(a), because the record does not evince that, before trial, Bindues accepted responsibility for his conduct and proceeded to trial to challenge a statute's applicability to his conduct.  Accordingly, the Court determines that

---

[1]Although Bindues filed the Bindues Sentencing Memo. under seal, the Court does not file this Memorandum Opinion and Order under seal.  Bindues indicates that he filed the Bindues Sentencing Memo. under seal, because it uses Jane Doe's real name.  See Bindues Sentencing Memo. at 1 n.1.  The Court was careful not to use Doe's real name in this Memorandum Opinion and Order and, accordingly, does not file this Memorandum Opinion and Order under seal.

Bindues' offense level is 43, criminal history category is I, and Guideline imprisonment range is life.

## FACTUAL BACKGROUND

When considering an objection to a presentence report, and when neither party challenges the sufficiency of the presentence report's factual allegations, the Court can accept the presentence report's factual allegations as true.  See Fed. R. Crim. P. 32(i)(3)(A).  Where, as here, a party objects to some or all of the facts in a presentence report, a court must "rule on the dispute or determine that a ruling is unnecessary . . . ." Fed. R. Crim. P. 32(i)(3)(B).  Accordingly, the Court takes its facts from the portions of the Presentence Investigation Report, filed July 24, 2023 (Doc. 148)("PSR") to which there are no objections, as well as the facts provided in the Bindues Sentencing Memo., the United States' Sentencing Memorandum, filed August 1, 2023 (Doc. 150)("U.S. Sentencing Memo."), and the evidence and testimony that was presented at trial.

In January, 2017, Bindues began working as a part-time athletic coach for Los Lunas Public Schools, in Los Lunas, New Mexico.  See PSR ¶ 61, at 16.  In September 2020, he was working as the C-team girls basketball coach and head track coach at Los Lunas High School.  See PSR ¶ 8, at 5.  In his capacity as a basketball and track coach at Los Lunas High, he met Doe.  See PSR ¶ 8, at 5.  At the start of the 2020-2021 academic year, Doe was a fourteen-year-old[2] freshman.  See PSR ¶ 8, at 5.  Doe competed on the Los Lunas High C-team basketball team and track team.  See PSR ¶ 8, at 5.

Between September, 2020, and June, 2021, Bindues and Doe exchanged 17,275 text messages.  See PSR ¶ 9, at 5;  Text Messages Exchanged Between Bindues and Doe, Government's

---

[2]Doe turned fifteen on April 1, 2021.  See PSR ¶ 8, at 5.

Exhibit 9 (admitted by stipulation on May 1, 2023)("Text Messages").  When Bindues and Doe began texting, their messages were relatively innocuous.  See, e.g., Text Messages at 1-2 (Doe telling Bindues she named her new pet hedgehog "Benny" after him); Text Messages at 3 (Doe asking Bindues if he still had a ring that she had asked him to hold onto during basketball practice).  As time progressed, however, their messages gradually became more romantically and sexually charged.  See PSR ¶ 13, at 6.  For example, the two began calling each other nicknames like "bum," Text Messages at 4, "fiancé" Text Messages at 11, "babe," Text Messages at 28, and "sugar lips," Text Messages at 185.  They discussed getting married.  See Text Messages at 39-40.  Doe told Bindues that she loved him.  See Text Messages at 80.  They discussed having and naming kids together.  See Text Messages 317-30.  Bindues told Doe that she is "straight up gorgeous" and that her "personality and looks [are] top notch."  Text Messages at 561.  In April, 2021, Doe told Bindues "I forget that you are my coach sometimes."  Text Messages at 526.  Bindues agreed that "sometimes I may feel more than I should as well."  Text Messages at 530.  They both indicated that they were not joking when they spoke about seeing a romantic future with one another.  See Text Messages at 532-37.

On April 6, 2021, Bindues' text conversation with Doe became sexually explicit.  See Text Messages at 814-21 (Bindues and Doe discussing a sexual dream Doe had about Bindues).  Doe told Bindues that her vagina was "all [his] when [he] want[s] it," Text Messages at 821, to which Bindues replied "Right now," Text Messages at 821. Bindues told Doe her vagina would be "tested for taste" and "entered to test for feel."  Text Messages at 823.  Bindues told Doe he wanted to "slide on," but that he would have to "imagine for now."  Text Messages at 825.  On April 10, 2021, Doe sent Bindues a "pg version" of a sexual photo of herself, Text Messages at 1091, but Bindues said he had "non pg versions in mind," Text Messages at 1092.  Bindues later asked Doe

when he would get a "sneak peek" photo of her.  Text Messages at 1561.  On April 27, 2021, Doe

sent Bindues several photos of herself in her underwear.  See Government's Exhibit 10 (admitted

May 4, 2023).  On April 20, 2021, Bindues asked Doe to "send nudes."  Text Messages at 2051.

In June, 2021, Doe sent Bindues eight videos of herself masturbating.  See Governments Exhibits

25-32 (admitted May 4, 2023).

  As Bindues and Doe's conversation became more explicit throughout April and May, 2021,

the two continued to see one another at school and athletic events.  See PSR ¶ 15, at 7.  Bindues

and Doe engaged in sexual contact on several of these occasions.  See PSR ¶ 15, at 7.  First, on a

bus ride to a basketball game, Bindues touched Doe's vagina.  See PSR ¶ 15, at 7.  On two later

occasions, Bindues and Doe engaged in oral and vaginal sex in the high school locker room.  See

PSR ¶ 15, at 7.  On another occasion, Bindues and Doe attempted to have vaginal sex as Bindues

drove Doe to a basketball game.  See PSR ¶ 15, at 7.  Additionally, Bindues and Doe engaged in

oral and vaginal sex at Bindues' home on two separate occasions.  See PSR ¶ 15, at 7.

## PROCEDURAL BACKGROUND

  The Court provides a brief summary of the procedural background relevant to the Court's

disposition of the objections before it.  On February 2, 2023,[3] the Grand Jury indicted Bindues on

two counts: (i) Coercion and Enticement, in violation of 18 U.S.C. § 2422(b); and (ii) Production

of Visual Depictions of a Minor Engaging in Sexually Explicit Conduct, in violation of 18 U.S.C.

§§ 2251(a), 2251(e), and 2256.  See Superseding Indictment at 1, filed February 22, 2023 (Doc.

88).  Bindues pled not guilty.  See Clerk's Minutes at 1, filed March 30, 2022 (Doc. 14).  Bindues'

---

[3]The Grand Jury previously indicted Bindues on nine counts, see Indictment at 1, filed
March 23, 2022 (Doc. 2), but later superseded that indictment, see Superseding Indictment at 1.

trial began on May 1, 2023.  See Clerk's Minutes, filed May 1, 2023 (Doc. 138).  On May 4, 2023,

the jury found Bindues guilty on both counts.  See Verdict Form, filed May 4, 2023 (Doc. 137).

1.      **PSR.**

On July 24, 2023,[4] the United States Probation Office ("USPO") filed the PSR.  See

PSR at 1. The PSR establishes that Bindues' base offense level is 32.  See PSR ¶ 24, at 9.  The

PSR applies four increases to Bindues' base offense level: (i) a 2-level increase pursuant to

U.S.S.G. § 2G2.1(b)(1)(B), because the offense involves the commission of a sexual act; (ii) a 2-

level increase pursuant to U.S.S.G. § 2G2.2(b)(2)(A), because Doe was between the ages of twelve

and sixteen; (iii) a 2-level increase pursuant to U.S.S.G. § 3B1.3, because Bindues abused a

position of public or private trust; and (iv) a 5-level increase under U.S.S.G. § 4B1.5(b), because

Bindues is a repeat and dangerous sex offender against minors.  See PSR ¶¶ 25-30, at 9-10.  The

PSR does not apply any decreases to Bindues' base offense level.  See PSR ¶ 25-32, at 9-10.  In

the end, the PSR establishes that Bindues' total offense level is 43.  See PSR ¶ 33, at 10.  With an

offense level of 43 and a criminal history category of I, the PSR asserts that Bindues' Guideline

imprisonment range is life.  See PSR ¶ 68, at 18.

2.      **U.S. Sentencing Memo.**

On August 1, 2023, the United States filed the U.S. Sentencing Memo.  See U.S.

Sentencing Memo. at 1.  In the U.S. Sentencing Memo., the United States does not raise any

objections to the PSR, and asks the Court to impose a Guideline sentence: life imprisonment.  See

---

[4]The USPO filed one prior version of the PSR before it filed the operative PSR.  See
Presentence Investigation Report, filed June 29, 2023 (Doc. 145)("Original PSR").  The Original
PSR did not include the 2-level enhancement under U.S.S.G. § 3B1.3.  See Original PSR ¶¶ 22-
33, at 9-10.  Accordingly, the Original PSR indicated that Bindues' offense level is 41, his criminal
history category is I, and his Guideline imprisonment range is 324 to 405 months.  See Original
PSR ¶ 68, at 18.

U.S. Sentencing Memo. at 1.  In support of that request, the United States contends that Bindues'
"crimes represent some of the most reprehensible conduct an individual can engage" in.  U.S.
Sentencing Memo. at 2.  The United States underscores that Bindues "abuse[d] . . . his position of
trust in the Los Lunas community [and] damaged not only Jane Doe and her family but the athletic
community more broadly."  U.S. Sentencing Memo. at 6.  The United States asserts that a
Guidelines sentence adequately will reflect the 18 U.S.C. § 3553(a) factors, namely: (i) the
seriousness of the offense; (ii) promoting respect for the law; (iii) providing just punishment;
(iv) deterrence; (v) public safety; and (vi) avoiding unwarranted sentencing disparities.  See U.S.
Sentencing Memo. at 8-10; 18 U.S.C. § 3553(a).

   **3.    Bindues Sentencing Memo.**

       On August 2, 2023, Bindues filed the Bindues Sentencing Memo.  See Bindues Sentencing
Memo. at 1.  In the Bindues Sentencing Memo., Bindues raises two objections to the PSR's
calculation of his total offense level.  See Bindues Sentencing Memo. at 3.  First, Bindues objects
to the 5-level enhancement under § 4B1.5(b).  See Bindues Sentencing Memo. at 3-4.  Bindues
contends that, for § 4B1.5(b)'s purposes "prohibited sexual conduct" encompasses "'(i) any
offense described in 18 U.S.C. § 2426(b)(1)(A) or (B); (ii) the production of child pornography;
or (iii) trafficking in child pornography.'"  Bindues Sentencing Memo. at 3 (quoting U.S.S.G.
§ 4B1.5 Application Note 4(A)).  He emphasizes that "[n]o other offensive actions may be
considered" in determining whether a defendant engaged in prohibited sexual conduct.  Bindues
Sentencing Memo. at 3.  Bindues contends that (i) does not apply to him, because it only implicates
prior convictions, and he has none.  See Bindues Sentencing Memo. at 3.  He adds that (iii) also
does not apply to him, because there are no allegations that he trafficked child pornography.  See
Bindues Sentencing Memo. at 3.

Accordingly, Bindues contends that the only category of prohibited sexual conduct enumerated in U.S.S.G. § 4B1.5 Application Note 4(A) that plausibly could apply to him is production of child pornography.  See Bindues Sentencing Memo. at 3.  He concedes that "there is . . . one instance of production of child pornography, which is the crime of which Mr. Bindues was convicted," but stresses that § 4B1.5 requires two instances of prohibited sexual conduct. Bindues Sentencing Memo. at 3.  See U.S.S.G. § 4B1.5(b) Application Note 4(B)(i).  Bindues acknowledges that the PSR faults him for causing Doe to create eight different videos of herself masturbating.  See Bindues Sentencing Memo. at 4 (citing PSR ¶ 15, at 7).  In response, he gestures to a text message that Doe sent in which she indicates "I just always take a bunch of different [pictures] and pic [sic] a couple to send."  Bindues Sentencing Memo. at 4.  He argues that, in light of this message, "there is no evidence that any action on behalf of Mr. Bindues was the intervening cause of each video that was produced."  Bindues Sentencing Memo. at 3.  Additionally, he emphasizes that the jury convicted him of a single count of production, and that, as a result, "the jury found his conduct constituted one act of production of child pornography, and not several acts as the PSR indicates."  Bindues Sentencing Memo. at 4.[5]  He adds that mere possession or receipt of child pornography is not sufficient to support § 4B1.5(b)'s application.  See Bindues Sentencing Memo. at 4 (citing U.S.S.G. § 4B1.5 Application Note 4(A)).

Second, Bindues objects that the PSR should reflect a 2-level reduction pursuant to U.S.S.G. § 3E1.1(a), because Bindues has accepted responsibility for his offense.  See Bindues

---

[5]In raising this argument, Bindues objects to the PSR's assertion that "Bindues used Jane Doe to produce eight sexual videos."  PSR ¶ 16, at 4.  See Bindues Sentencing Memo. at 4. Bindues takes particular issue with the PSR's use of the word "used."  PSR ¶ 16, at 4.  See Bindues Sentencing Memo. at 4.  The Court will work with the parties and the USPO at the sentencing hearing scheduled for August 8, 2023, to resolve factual objections to the PSR and any other objections concerning the PSR's phrasing.

Sentencing Memo. at 5; U.S.S.G. § 3E1.1(a).  Bindues notes that defendants who proceed to trial can be eligible for the § 3E1.1(a) reduction where they "go[] to trial and preserve issues that do not relate to factual guilt (e.g. to make a constitutional challenge to a statute *or a challenge to the application of the statute to his conduct*.)"  Bindues Sentencing Memo. at 5 (quoting U.S.S.G. § 3E1.1 Application Note 2 (emphasis in Bindues Sentencing Memo., but not in U.S.S.G. § 3E1.1 Application Note 2).  Bindues contends that, "[i]n choosing to take the matter to trial, his only defense was that the federal statutes in question did not apply to his conduct; he has always recognized that he was solely responsible for the conduct itself."  Bindues Sentencing Memo. at 6.  In support of that contention, Bindues gestures to the Psychological Evaluation (dated February 2, 2023), filed August 2, 2023 (Doc. 151-2).  The Psychological Evaluation indicates that Bindues told a psychological evaluator that "he knew better" and that his relationship with Doe "never should have happened." Psychological Evaluation at 7.  Further, the Psychological Evaluation indicates that Bindues said that the conduct was "his fault, and that he is responsible for his behavior."  Psychological Evaluation at 7.  The evaluation adds that Bindues "expressed remorse for his actions and occasionally became tearful when discussing the situation."  Psychological Evaluation at 7.

Bindues explains that, if the Court sustains his objections to the PSR, his adjusted offense level would be 36, and his adjusted Guideline range would be 188-235 months.  See Bindues Sentencing Memo. at 6.  He adds that the statutory minimum terms of imprisonment associated with convictions under 18 U.S.C. §§ 2422(b) and 2251 are 10 years and 15 years, respectively. See Bindues Sentencing Memo. at 6.  Bindues requests a sentence of 15 years.  See Bindues Sentencing Memo. at 9.

4.    <u>United States' Response to the Objections in the Bindues Sentencing Memo</u>.

The United States responds to the objections that Bindues raises in the Bindues Sentencing Memo.  See United States' Response to Defendant's Objections to the Pre-Sentence Report, filed August 6, 2023 (Doc. 152)("U.S. Objections Response").  In the U.S. Objections Response, the United States asks the Court to overrule Bindues' objections to the PSR and sentence Bindues based on an offense level of 43, as the PSR recommends.  <u>See</u> U.S. Objections Response at 1. First, the United States asks the Court to overrule Bindues' objection that the Court should not apply the 5-level increase to his base offense level under U.S.S.G. § 4B1.5(b).  <u>See</u> U.S. Objections Response at 1-4.  The United States asserts that, in determining whether Bindues engaged in "'prohibited sexual conduct,'" it may look to "'any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B).'"  U.S. Objections Response at 2 (quoting U.S.S.G. § 4B1.5(b)(1) Application Note 4(A)). The United States asserts that 18 U.S.C. § 2426(b)(1)(A) applies to an offense "under this chapter, chapter 109A, chapter 110, or section 1591,"  while 18 U.S.C. § 2426(b)(1)(B) adds any offense "under State law for an offense consisting of conduct that would have been an offense under a chapter referred to in subparagraph (A) if the conduct had occurred withing the special maritime and territorial jurisdiction of the United States."   18 U.S.C. § 2426(b)(1).  The United States contends that the evidence presented at trial demonstrates that Bindues and Doe engaged in sexual contact on at least six occasions.  <u>See</u> U.S. Objections Response at 2-3.  The United States adds that the evidence shows that Bindues also caused Doe to film herself masturbating for him.  <u>See</u> U.S. Objections Response at 3.  The United States contends that these seven incidents -- six sexual encounters and one video -- each amount to an instance of prohibited sexual conduct within U.S.S.G. § 4B1.5(b)(1)'s meaning.  <u>See</u> U.S. Objections Response at 3.

Next, the United States asserts that the seven instances of prohibited sexual conduct amount to a "pattern" of "prohibited sexual conduct" within U.S.S.G. § 4B1.5(b)'s meaning.  U.S. Objections Response at 3 (quoting U.S.S.G. § 4B1.5(b)).  The United States explains that a "pattern" requires only "two separate occasions" of prohibited conduct, which can encompass the conduct charged in the offense of conviction.  U.S. Objections Response at 3 (citing U.S.S.G. § 4B1.5(b) Application Note 4(B)(ii); <u>United States v. Cifuentes-Lopez</u>, 40 F.4th 1215, 1219 (10th Cir. 2022)).  The United States avers that the Court can consider the six instances of sexual contact, the video, and Bindues' coercion and enticement conviction in determining whether he engaged in a pattern of prohibited conduct.  <u>See</u> U.S. Objections Response at 4.  In sum, the United States argues that there are "well more than two separate occasions" of prohibited conduct here, which is sufficient to support § 4B1.5(b)'s application.  U.S. Objections Response at 4.

Second, the United States contends that Bindues is not entitled to a 2-level reduction under U.S.S.G. § 3E1.1(a).  <u>See</u> U.S. Objections Response at 4.  The United States asserts that Bindues' request for a 2-level reduction is "meritless."  U.S. Objections Response at 5.  The United States rejects Bindues' suggestion that he proceeded to trial to contest the statutes' applicability to his conduct and asserts that, instead, he advances the theory that "he did nothing to coerce Jane Doe because she wanted to have sex with him all along."  U.S. Objections Response at 5.  The United States emphasizes that Bindues did not file any pre-trial motions that evince that he had accepted responsibility for his conduct and was proceeding to trial only to contest the statutes' applicability to his conduct.  <u>See</u> U.S. Objections Response at 5.  Accordingly, the United States implores the Court to overrule Bindues' § 3E1.1(a) objection.  <u>See</u> U.S. Objections Response at 5.

**5.      USPO's Addendum to the PSR.**

The USPO also responds to the objections that Bindues raises in the Bindues Sentencing Memo.  See Addendum to the Presentence Report, filed August 7, 2023 (Doc. 153)("PSR Addendum").  First, the USPO "maintains the enhancement pursuant to USSG § 4B1.5(b)(1) is appropriately applied" in the PSR.  PSR Addendum at 2.  The USPO underscores that the PSR indicates that there were numerous instances of sexual contact between Bindues and Doe.  See PSR Addendum at 2 (citing PSR ¶ 15, at 7).  The PSR Addendum asserts that these instances amount to a "pattern of activity" for § 4B1.5(b)'s purposes.  PSR Addendum at 2 (citing U.S.S.G. § 4B1.5 Application Note 4(B)(i)).  For these reasons, the USPO declines to remove the § 4B1.5(b) enhancement from the PSR.  See PSR Addendum at 2.

Second, the USPO indicates that it properly chose not to apply the § 3E1.1(a) reduction to Bindues' base offense level.  See PSR Addendum at 3.  The USPO indicates that it "has not noted a clear demonstration of acceptance of responsibility provided by the defendant prior to trial in this matter."  PSR Addendum at 3.  The USPO adds that it did not receive the "psychological evaluation referenced by the defendant until August 2, 2023."  PSR Addendum at 3.  For these reasons, the USPO declines to amend the PSR to reflect the 2-level reduction for acceptance of responsibility.  See PSR Addendum at 3.

**LAW REGARDING U.S.S.G. § 4B1.5(b)**

U.S.S.G. § 4B1.5 applies to "repeat and dangerous sex offender[s] against minors."  U.S.S.G. § 4B1.5.  A "minor" is "an individual who had not attained the age of 18 years," "an individual, whether fictitious or not, who a law enforcement officer represented to a participant (i) had not attained the age of 18 years; and (ii) could be provided for the purposes of engaging in sexually explicit conduct;" or "an undercover law enforcement officer who represented to a

participant that the officer had not attained the age of 18 years."  U.S.S.G. § 4B1.5 Application

Note 1.  Sub-section (b) provides:

> (b)  In any case in which the defendant's instant offense of conviction is a covered sex crime, neither § 4B1.1 nor subsection (a) of this guideline applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct:
>
> > (1)  The offense level shall be 5 plus the offense level determined under Chapters Two and Three.  However, if the resulting offense level is less than level 22, the offense level shall be level 22, decreased by the number of levels corresponding to any applicable adjustment from § 3E1.1.
> >
> > (2)  The criminal history category shall be the criminal history category determined under Chapter Four, Part A.

U.S.S.G. § 4B1.5(b).   Application Note 2 clarifies that a "covered sex crime" for U.S.S.G.

§ 4B1.5(b)'s purposes is

> (A) an offense, perpetrated against a minor, under (i) chapter 109A of title 18, United States Code; (ii) chapter 110 of such title, not including trafficking in, receipt of, or possession of, child pornography, or a recordkeeping offense; (iii) chapter 117 of such title, not including transmitting information about a minor or filing a factual statement about an alien individual; or (iv) 18 U.S.C. § 1591; or (B) an attempt or a conspiracy to commit any offense described in subdivisions (A)(i) through (iv) of this note.

U.S.S.G. § 4B1.5 Application Note 2.   Additionally, Application Note 4(A) establishes that

"prohibited sexual conduct"

> means any of the following: (i) any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B); (ii) the production of child pornography; or (iii) trafficking in child pornography only if, prior to the commission of the instant offense of conviction, the defendant sustained a felony conviction for that trafficking in child pornography. It does not include receipt or possession of child pornography.

U.S.S.G. § 4B1.5 Application Note 4(A).   Similarly, Application Note 4(B) clarifies that a

defendant engages in a "pattern" of prohibited sexual conduct "if on at least two separate

occasions, the defendant engaged in prohibited sexual conduct with a minor."  U.S.S.G. § 4B1.5

Application Note 4(B)(i).  Finally, Application Note 4(B)(ii) adds that "[a]n occasion of prohibited sexual conduct may be considered for purposes of subsection (b) without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion." U.S.S.G. § 4B1.5 Application Note 4(B)(ii).  The United States Court of Appeals for the Tenth Circuit has clarified that, "a pattern of activity includes when a defendant engages in sexual conduct against two different minors on separate occasions or against the same minor on two different occasions."  United States v. Cifuentes-Lopez, 40 F.4th at 1219.

The Court applies the § 4B1.5(b) enhancement in United States v. Calvert-Cata, No. CR 16-4566 JB, 2017 WL 4785957 (D.N.M. October 21, 2017)(Browning, J.).  In United States v. Calvert-Cata, Calvert-Cata pled guilty to one count of violating 18 U.S.C. § 2242(2) after he engaged in sexual contact with a woman who was heavily intoxicated.  See 2017 WL 4785957, at *2.  At sentencing, the USPO applied a 5-level enhancement to Calvert-Cata's base offense level under § 4B1.5(b), because Calvert-Cata had engaged in sexual intercourse with a 13-year-old when he was twenty years old.  See 2017 WL 4785957, at *6.  The Court applies the 5-level enhancement to Calvert-Cata's base offense level.  See 2017 WL 4785957, at *6.  First, the Court determines that 18 U.S.C. § 2242(2) is a covered offense for § 4B1.5(b)'s purposes.  See 2017 WL 4785957, at *6.  Next, the Court determines that Calvert-Cata's offense of conviction involves a minor victim.  See 2017 WL 4785957, at *6.  Finally, the Court concludes that Calvert-Cata engaged in a pattern of prohibited conduct, on the basis of: (i) his offense of conviction; and (ii) his prior sexual intercourse with a 13-year-old.  See 2017 WL 4785957, at *6.  Accordingly, the Court applies a 5-level increase to Calvert-Cata's base offense level.  See 2017 WL 4785957, at *6.

More recently, the Court applies the 5-level § 4B1.5(b) enhancement in United States v,

- 13 -

Aguilar, No. CR 21-0670 JB, 2023 WL 2682375 (D.N.M. March 29, 2023)(Browning, J.).   In

United States v. Aguilar, Aguilar pled guilty to one count of abusive sexual contact under 18

U.S.C. §§ 2244(a)(5) and 2246(3), after he touched a minor over her clothes.   See 2023 WL

2682375, at *5.   The Court finds that Aguilar touched the minor over her clothes on at least two

occasions.   See 2023 WL 2682375, at *23.   Because 18 U.S.C. §§ 2244(a)(5) and 2246(3) are

covered offenses, and Aguilar touched the minor over her clothes twice, the Court concludes that

Aguilar's base offense level is subject to a 5-level increase under § 4B1.5(b).   See 2023 WL

2682375, at *23 (citing United States v. Cifuentes-Lopez, 40 F.4th at 1219).

### LAW REGARDING REDUCTIONS FOR ACCEPTANCE OF RESPONSIBILITY UNDER U.S.S.G. § 3E1.1

The defendant has the burden of proving by a preponderance of the evidence that he is

entitled to a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.   See United States

v. Meyers, 95 F.3d 1475, 1486 (10th Cir. 1996); United States v. McMahon, 91 F.3d 1394, 1396-97

(10th Cir. 1996).   The Tenth Circuit reviews "a district court's determination not to grant a

reduction for acceptance of responsibility for clear error."   United States v. Ochoa-Olivas, 426 F.

App'x 612, 613 (10th Cir. 2011)(unpublished)[6](citing United States v. Hutchinson, 573 F.3d 1011,

1032 (10th Cir. 2009)).   In reviewing the district court's findings, the Tenth Circuit "remain[s]

mindful that '[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance

of responsibility.   For this reason, the determination of the sentencing judge is entitled to great

deference on review.'"   United States v. Ivy, 83 F.3d 1266, 1292-93 (10th Cir. 1996)(quoting

U.S.S.G. § 3E1.1, Application Note 5).

---

[6]United States v. Ochoa-Olivas is an unpublished opinion, but the Court can rely on an
unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th

U.S.S.G. § 3E1.1 provides:

(a)     If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b)     If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

U.S.S.G. § 3E1.1.  The application notes to U.S.S.G. § 3E1.1(a) indicate that, in deciding whether

to apply an acceptance-of-responsibility reduction, a court can consider:

(A)     truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct).   Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a).  A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility;

---

Cir. R. 32.1(A)("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court finds that United States v. Ochoa-Olivas and United States v. Gonzalez Gomez, 85 F. App'x 94 (10th Cir. 2003) have persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

(B)     voluntary termination or withdrawal from criminal conduct or associations;

(C)     voluntary payment of restitution prior to adjudication of guilt;

(D)     voluntary surrender to authorities promptly after commission of the offense;

(E)     voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;

(F)     voluntary resignation from the office or position held during the commission of the offense;

(G)     post-offense rehabilitative efforts (e.g., counseling or drug treatment); and

(H)     the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

See U.S.S.G. § 3E1.1 Application Note 1.

The § 3E1.1 reduction applies most regularly in cases where a defendant pleas.  U.S.S.G.

§ 3E1.1 Application Note 3 provides:

Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under § 1B1.3 (Relevant Conduct) (see Application Note 1(A)), will constitute significant evidence of acceptance of responsibility for the purposes of subsection (a).  However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility.  A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.

U.S.S.G. § 3E1.1 Application Note 3.  Although the § 3E1.1 reduction is most regularly applied

in cases where a defendant pleas, see U.S.S.G. § 3E1.1 Application Note 3, the Application Notes

clarify that the reduction can apply to a defendant who proceeds to trial in "rare situations":

This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse.  Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction.  In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his

constitutional right to a trial.  This may occur, for example, where a defendant goes
to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make
a constitutional challenge to a statute or a challenge to the applicability of a statute
to his conduct).  In each such instance, however, a determination that a defendant
has accepted responsibility will be based primarily upon pre-trial statements and
conduct.

U.S.S.G. § 3E1.1 Application Note 2.

Controversies concerning the acceptance-of-responsibility reduction often come up in
cases where a defendant changes his or her plea in the eleventh hour before trial.  For example, in
United States v. Ochoa-Olivas, 426 F. App'x at 612, the Tenth Circuit addresses whether a
defendant who pled guilty the morning his trial was scheduled to commence was entitled to a 2-
level reduction under U.S.S.G. § 3E1.1(a).  See 426 F. App'x at 613.  On the day trial was set to
begin, "the district court assembled the jury venire, but they were dismissed when Ochoa-Olivas
announced that he wanted to plead guilty.  After that announcement, the district court conducted a
change of plea hearing, and Ochoa-Olivas pled guilty to the one count" of illegal reentry, in
violation of 8 U.S.C. § 1326(a) and (b).  426 F. App'x at 613.  Later, the USPO released a PSR,
which, pursuant to U.S.S.G. § 3E1.1(a), included a 2-level reduction for acceptance of
responsibility.  See 426 F. App'x at 613.   The United States objected to the reduction, and "argued
that it expended resources in preparing for trial and in providing travel and lodging for witnesses
to attend the trial.  Therefore, it argued that [the defendant] should not be entitled to any reduction
for acceptance of responsibility."  426 F. App'x at 613.  The trial court agreed with the United
States, reasoning that the defendant was not entitled to the reduction, because he had waited until
the morning of trial to change his plea.  See 426 F. App'x at 613.

On appeal, The Tenth Circuit affirms the district court, stating:

The Sentencing Guidelines explicitly allow the district court to consider the
timeliness of a defendant's guilty plea. U.S.S.G. § 3E1.1 cmt. n.1(h).  We caution

that a late decision to plead guilty does not necessarily disqualify a defendant from receiving a downward adjustment for acceptance of responsibility. But a defendant who pleads guilty does not necessarily qualify for a downward adjustment for acceptance of responsibility either. See id. § 3E1.1 cmt. n. 3. It is up to the district court to determine whether a defendant qualifies for this downward adjustment using the appropriate considerations. In this case, the district court did just that, and therefore we cannot say that the district court committed clear error.

2011 WL 2160551, at *2.

Similarly, in United States v. Gonzalez Gomez, 85 F. App'x 94 (10th Cir. 2003)(unpublished), the Tenth Circuit affirms a district court's refusal to decrease the offense level of a defendant who, "[o]n August 16, 2002, the same day of [his] trial, . . . very reluctantly pled guilty" and "informed the assigned probation officer of his intent to return to the United States despite agreeing not to." 85 F. App'x at 95. The Tenth Circuit affirms the district court, holding that the defendant's "reluctant plea on the day of trial, coupled with his declared intent to continue to violate the law as he had done previously, undermines his argument that he accepts responsibility for his criminal conduct." 85 F. App'x at 95-96.

Section 3E1.1(a) controversies also frequently arise in cases where a defendant pleas and accepts responsibility, but then engages in criminal activity while in pre-sentencing detention. For example, in United States v. Finnesy, 953 F.3d 675 (10th Cir. 2020), the Tenth Circuit affirms a trial court's decision not to apply the acceptance-of-responsibility reduction to a defendant's sentence, because the defendant attempted to distribute narcotics to another inmate and assaulted another inmate while in pre-sentencing detention. See 953 F.3d 675 at 702. Similarly, in United States v. Prince, 204 F.3d 1021 (10th Cir. 2000), the Tenth Circuit affirms a district court's denial of an adjustment for acceptance of responsibility for bank robbery based on reports that the defendant had stabbed another inmate while in custody awaiting sentencing. See 204 F.3d at 1023-24.

The Court recently confronted one such case in United States v. Valenzuela, No. CR 19-0585 JB, 2021 WL 1109191 (D.N.M. March 23, 2021)(Browning, J.).  Valenzuela pled guilty to one count of being a felon in possession of a firearm.  See 2021 WL 1109191, at *1.  As part of his plea agreement, he accepted responsibility for his offense.  See 2021 WL 1109191, at *1.  In Valenzuela's PSR, the USPO recommended that the Court reduce Valenzuela's offense level by 2 levels, pursuant to § 3E1.1(a).  See 2021 WL 1109191, at *2.  Valenzuela was in custody as he awaited sentencing.  See 2021 WL 1109191, at *2.  The United States Marshal Service reported that, while in custody, Valenzuela was involved in a fight with another inmate and found in possession of suboxone and methamphetamine.  See 2021 WL 1109191, at *2.  In light of these incidents, the United States urged the Court not to apply the 2-level reduction for acceptance of responsibility, because "Valenzuela's ongoing criminal conduct evinces his failure to accept responsibility."  2021 WL 1109191, at *2.

The Court overrules the United States' objection and applies the 2-level reduction to Valenzuela's offense level.  See 2021 WL 1109191, at *8-9.  The Court turns to the factors enumerated in U.S.S.G. § 3E1.1 Application Note 1 to determine whether Valenzuela has accepted responsibility.  See 2021 AL 1109191, at *8.  The Court determines that two factors indicate that Valenzuela accepted responsibility, while two factors indicate that he did not accept responsibility. See 2021 WL 1109191, at *9.  On balance, the Court concludes that the factors indicating that Valenzuela accepted responsibility outweigh the factors indicating that he did not accept responsibility, and, accordingly, the Court applies the 2-level decrease for acceptance of responsibility.  See 2021 WL 1109191, at *9.

<u>ANALYSIS</u>

The Court overrules the objections that Bindues raises in the Bindues Sentencing Memo. First, the Court concludes that Bindues' base offense level is subject to a 5-level increase pursuant to U.S.S.G. § 4B1.5(b), because Bindues engaged in a pattern of prohibited sexual conduct with Doe, a minor.   Second, the Court concludes that Bindues' base offense level is not subject to a 2-level reduction under U.S.S.G. § 3E1.1(a), because the record does not evince that, before trial, Bindues accepted responsibility for his conduct and proceeded to trial to challenge 18 U.S.C. §§ 2422(b) and 2251(a)'s applicability to his conduct.   The Court addresses both objections in turn.

**I.      BINDUES' BASE OFFENSE LEVEL IS SUBJECT TO A 5-LEVEL INCREASE PURSUANT TO U.S.S.G. § 4B1.5(b), BECAUSE BINDUES ENGAGED IN A <u>PATTERN OF PROHIBITED SEXUAL CONDUCT WITH DOE.</u>**

The Court concludes that Bindues' base offense level is subject to a 5-level increase under U.S.S.G. § 4B1.5(b), because Bindues engaged in a pattern of prohibited sexual conduct with Doe. As a threshold matter, the Court determines that both of Bindues' convictions are "covered sex crime[s]" for § 4B1.5(b)'s purposes, because 18 U.S.C. § 2422(b) is a chapter117 offense, and 18 U.S.C. § 2251(a) is a chapter 110 offense.   U.S.S.G. § 4B1.5(b) Application Note 2. <u>See</u> 18 U.S.C. §§ 2422(b); 2251(a).   Additionally, the Court determines that Doe is a minor, because she had not attained the age of 18 at the time of the offense. <u>See</u> PSR ¶ 8, at 5; U.S.S.G. § 4B1.5 Application Note 1.

Next, the Court determines that Bindues engaged in "prohibited sexual conduct" with Doe on at least seven occasions.   U.S.S.G. § 4B1.5(b).   The first six occasions represent the six times Bindues and Doe engaged in sexual conduct. <u>See</u> PSR ¶ 15, at 7.   Sexual contact with a minor is an offense under New Mexico State law that "would have been an offense under a chapter referred

to in subparagraph (A) if the conduct had occurred within the special maritime and territorial jurisdiction of the United States."  18 U.S.C. § 2426(b)(1)(B).  More specifically, sexual contact with a minor under the age of 16 could have been charged as a violation of 18 U.S.C. § 2243(a) if it had occurred "in the special maritime and territorial jurisdiction of the United States."  18 U.S.C. § 2243(a).  Moreover, 18 U.S.C. § 2243(a) is a chapter 109A offense.  See 18 U.S.C. § 2243(a).  For these reasons, all six instances of sexual contact between Bindues and Doe amount to "prohibited sexual conduct" within U.S.S.G. § 4B1.5(b)'s meaning.  Additionally, the Court agrees with the parties that Bindues' underlying conviction for producing a visual depiction of a minor engaged in sexually explicit conduct under 18 U.S.C. § 2251(a) amounts to a separate occasion of "prohibited sexual conduct" as well.  U.S.S.G. § 4B1.5(b).  See Bindues Sentencing Memo. at 3; U.S. Objections Response at 3-4.

Because the Court determines that Bindues engaged in prohibited sexual conduct with Doe on at least seven occasions, the Court concludes that Bindues engaged in a "pattern" of prohibited sexual conduct with Doe.  U.S.S.G. § 4B1.5(b) Application Note 4(B)(i) (establishing that a "pattern" requires two or more occasions of prohibited sexual conduct).  It is immaterial that all seven occasions involved the same minor and that all seven occasions occurred in the course of the offense of conviction.  See U.S.S.G. § 4B1.5(b) Application Note 4(B)(i); United States v. Cifuentes-Lopez, 40 F.4th at 1219; United States v. Aguilar, 2023 WL 2682375, at *23.  For these reasons, the Court concludes that Bindues' base offense level is subject to a 5-level enhancement pursuant to U.S.S.G. § 4B1.5(b).

## II.   BINDUES' BASE OFFENSE LEVEL IS NOT SUBJECT TO A 2-LEVEL REDUCTION UNDER U.S.S.G. § 3E1.1(a), BECAUSE BINDUES HAS NOT ACCEPTED RESPONSIBILITY FOR HIS CONDUCT.

The Court concludes that Bindues' base offense level is not subject to a 2-level reduction under U.S.S.G. § 3E1.1(a), because the record does not evince that Bindues proceeded to trial to "challenge . . . the applicability of a statute to his conduct."  U.S.S.G. § 3E1.1 Application Note 2. As the Court explains in greater detail in its legal section above, U.S.S.G. § 3E1.1(a) most commonly applies in cases where a defendant pleads guilty and accepts responsibility for his or her conduct as part of that plea agreement.  "In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial," including where a defendant goes to trial to "challenge . . . the applicability of a statute to his conduct."  U.S.S.G. § 3E1.1 Application Note 2 (emphasis added).  In those rare cases, "however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct."  U.S.S.G. § 3E1.1 Application Note 2.

The Tenth Circuit has clarified that a number of circumstances undermine acceptance of responsibility where a defendant proceeds to trial.  For example, the Tenth Circuit has held that a defendant is ineligible for the acceptance-of-responsibility reduction where the defendant denies having the requisite mens rea at trial.  See United States v. Tom, 494 F.3d 1277, 1281-82 (10th Cir. 2007); United States v. Bailey, 327 F.3d 1131, 1148 (10th Cir. 2003).  But see United States v. Gauvin, 173 F.3d 798 (10th Cir. 1999)(upholding the acceptance-of-responsibility reduction where the defendant "admitted to all the conduct with which he was charged," but went to trial to determine whether the "factual state of mind met the legal criteria of intent to harm").  Similarly, the Tenth Circuit has determined that a defendant is ineligible for the reduction where he or she contests the sufficiency of the United States' evidence.  See Salazar-Samaniega, 361 F.3d 1271,

1281 (10th Cir. 2004).  Additionally, the Tenth Circuit has established that a defendant is ineligible

for the reduction where the defendant proceeds to trial, but maintains that his or her conduct was

innocent.  See United States v. Hill, 197 F.3d 436, 446-47 (10th Cir. 1999).

Section 3E1.1(a)'s application is thorny in cases where a defendant professes to have

proceeded to trial to "challenge . . . the applicability of a statute to his conduct."  U.S.S.G. § 3E1.1

Application Note 2.  These cases hit on the sometimes murky line between factual defenses and

legal defenses.  The Tenth Circuit discusses this tension in United States v. Herriman, 739 F.3d

1250 (10th Cir. 2014).  In United States v. Herriman, Herriman placed a bomb near a gas pipeline,

turned himself in, but then pleaded not guilty and proceeded to trial.  See 739 F.3d at 1252.  At

trial, Herriman raised an insanity defense and asserted that his "irresistible impulse" to plant the

bomb prevented him from forming the requisite intent.  739 F.3d at 1253-54.  The jury convicted

Harriman.  See 739 F.3d at 1253.  At sentencing, the district court declined to apply the acceptance-

of-responsibility reduction to Herriman's base offense level, reasoning that Herriman's insanity

defense "directly challenges one of the elements of guilt."  See 739 F.3d at 1253.

On appeal, the Tenth Circuit affirms.  See 739 F.3d at 1263.  The Tenth Circuit surveys its

prior decisions on the acceptance-of-responsibility reduction, with a particular focus on United

States v. Gauvin, 173 F.3d at 198, the only case in which the Tenth Circuit affirms "a district

court's decision to grant an acceptance-of-responsibility adjustment to a defendant who forced the

government to take its evidence to a jury."  739 F.3d at 1556.  The Tenth Circuit distills that

caselaw into the rule that, where a defendant seeks the acceptance-of-responsibility reduction after

trial, the defendant "must demonstrate that he *only* disputed purely legal questions in going to trial

and did not contest material facts relating to his guilt of the charged offenses.  Mr. Herriman has

not made that showing."  739 F.3d at 1257 (emphasis in original).  The Tenth Circuit acknowledges

that Harriman's insanity defense had a "legal dimension," 739 F.3d at 1262, but that the parties

had a "factual disagreement" as to Herriman's mental state, which was "material to Mr. Herriman's

guilt," 739 F.3d at 1261.  In so holding, the Tenth Circuit adds:

> We are not insensitive to the reality that it may not always be easy to tell
> when a challenge is purely legal -- thereby making a defendant who advanced such
> a challenge at trial eligible for a § 3E1.1 adjustment -- and when a challenge
> embodies a factual component, such that the defendant who pursued such a
> challenge at trial would be disqualified from receiving a § 3E1.1 adjustment.
> Nevertheless, wherever in this context the line between law and fact is, we have no
> doubt that Mr. Herriman's claim falls cleanly on the wrong (i.e., factual) side of it.
> For, he and the government fiercely contested whether he was -- as a factual matter
> -- psychotic at the time he committed the charged acts.  We are content to leave to
> our colleagues in the future -- in cases that present closer questions -- the task of
> sketching in greater detail the contours of this law-fact line.

739 F.3d at 1262.

Here, the Court concludes that Bindues' defense theory is on the "wrong . . . side" of the

"law-fact line."  United States v. Herriman, 739 F.3d at 1262.   Before trial, Bindues presented a

wide range of defense theories.  For example, at the pre-trial conference on February 10, 2023, the

Court told Bindues "you certainly don't have to tell me if you don't want to," but asked "what [is]

your defense theory . . . going to be."  Draft Transcript of Hearing at 22:507 (taken February 10,

2023)(Court)("February 10 Tr.").[7]  Bindues replied that the primary issue in his case is "did he

coerce the minor to engage in sexually explicit conduct."  February 10 Tr. at 23:25-24:2 (Jones).

Bindues indicated that he did not intend to raise consent as an affirmative defense, see February

10 Tr. at 24:19 (Jones), but that Bindues' "intent is the main [issue]" and that there is a "causation

issue that we need to have the jury decide with respect to his intent with the production material,"

---

[7]The Court's citations to the February 10 Tr. Refer to the court reporter's original, unedited
version.  Any citation to a final version may have slightly different page and/or line numbers.

February 10. Tr. at 24:23-25:1 (Jones).  Bindues added later in the February 10 conference that "we have an issue with voluntariness."  February 10 Tr. at 36:7 (Jones).  These three defense theories -- causation, voluntariness, and lack of intent -- are factual defenses that challenge Bindues' "factual guilt."  U.S.S.G. § 3E1.1 Application Note 2.  On the basis of these representations, the Court believed that Bindues was proceeding to trial to challenge the factual underpinnings of the charges against him.  As the United States notes in the U.S. Objections Response, Bindues did not file any motions prior to trial that narrowed the scope of the issues presented to the jury.  See U.S. Objections Response at 5.

At trial, Bindues admitted that he acted inappropriately with a minor.  See Draft Transcript of Trial[8] (Day 1) at 236:12-16 (Jones)("Trial Tr.")(conceding during Bindues' opening statement that "Mr. Bindues is, frankly, dumb and shouldn't have done what he did.   You may find evidence to suggest that there is some other uncharged crimes that happened in this case"); Trial Tr. (Day 4) at 294:18-22 (Jones)(admitting during closing argument "he needs to learn a lot better boundaries, he needs to realize that teenage kids aren't your friends  . . . . He needed to learn that he was the adult"); id. at 290:17-19 (arguing "again, [there] may be some crime where he's responsible for that but it's not these ones").  Bindues submitted to the jury, however, that although his conduct was outside social norms, it did not amount to coercion as used in the jury instructions.  During closing arguments, Bindues presented the jury with the dictionary definitions of "persuade, induce, entice, coerce" and urged the jury to "stay focused" on whether he engaged in any conduct

---

[8]The Court does not yet have a final, consecutively paginated trial transcript.  The Court also does not have a complete, consecutively paginated draft transcript.  Instead, the Court relied on four separate rough transcripts of the trial, one for each day of trial.  Those four rough transcripts are not consecutively paginated.  Accordingly, the Court provides in its citations to the trial transcript's day, page, and line number.  The citations to any final trial transcript will have different page and/or line numbers.

that met those definitions.  Trial Tr. (Day 4) at 275:24-276:8 (Jones).  See id. at 277:11-278:14

(Jones).  Bindues argued to the jury that the evidence presented at trial demonstrated that Doe was

just as interested in pursuing a relationship with Bindues as Bindues was interested in pursuing a

relationship with Doe.  See Trial Tr. (Day 4) at 296:14-23 (Jones).  He contended that, because

Doe wanted the relationship, she was not a person "that needed to be coerced" into engaging in

sexual activity.  Trial Tr. (Day 4) at 288:1-2 (Jones).

At trial, Bindues continued to raise factual defenses.  For example, during his closing

argument, Bindues argued that he lacked the requisite specific intent.  See Trial Tr. (Day 4) at

279:8-12 (Jones)(arguing that the mens rea required "can't be this broad: well he intended to

maybe ask for a picture of [Doe].  No.  The specific intent has to be he intended for her to go take

a video of herself masturbating, and that he intended to cause a change in her mind."); id. at 280:9-

11 (Jones)("This case is about Mr. Bindues' intent and whether he intended to coerce or entice

[Doe]").  In so arguing, Bindues also challenged the sufficiency of the United States' evidence

showing Bindues' intent.  See Trial Tr (Day 4) at 283:17-21 (Jones)("It's not like he's sitting there

going: Oh man, I really, really, really just hope she has sex with me one day.  That's not reflected

in any of these messages.  It's all speculation.").  Ultimately, Bindues maintained at trial that he

did not coerce Doe, because Doe wanted to be involved with Bindues romantically.  See Trial Tr.

(Day 4) at 286:2-5 (Jones)(arguing that Doe "for better or for worse, whether we like it or not, Doe

made up her mind that she wanted to have sex with Mr. Bindues.  She wasn't coerced.  She wasn't

persuaded to get to that point.").

In the end, the "overall tenor" of Bindues' defense -- both before and during trial -- was

primarily factual.  United States v. Bailey, 327 F.3d at 1148.  Bindues alleged that he is not guilty

of coercion, because Doe willingly participated in their relationship and did not need Bindues to

coerce her into engaging in sexual conduct with him.  See Trial Tr. (Day 4) at 288:1-2 (Jones); id. at 286:2-5 (Jones).  Ultimately, Bindues' defense had little to do with the meaning of "coercion" as a matter of law and more to do with Doe's willingness to engage in sexual conduct with Bindues. Bindues did not "admit[] to all the conduct with which he was charged," United States v. Gauvin, 173 F.3d at 806, in an effort to raise a legal defense about the meaning of "coercion" within 18 U.S.C. §§ 2422(b) and 2251(a)'s meanings.  Instead, he dug in his heels and protested that he did not coerce Doe, because Doe wanted to engage in sexual conduct with him.  See Trial Tr. (Day 4) at 296:14-23 (Jones).  Additionally, at trial, Bindues maintained that he lacked the requisite intent and that the United States presented insufficient evidence, both of which undermine acceptance of responsibility.  See United States v. Tom, 494 F.3d at 1281-82; United States v. Bailey, 327 F.3d at 1148; United States v. Salazar-Samaniega, 361 F.3d at 1281.

The  Psychological  Evaluation  does  not  change  the  Court's  analysis.    Although  the Psychological  Evaluation  indicates  that  Bindues  admitted  that  he  "knew  better"  before  trial, Psychological Evaluation at 7, it does not change the fact that Bindues raised factual defenses at trial.  If Bindues had genuinely accepted responsibility before trial, as the Psychological Evaluation suggests he did, he could have expressed that acceptance of responsibility and remorse to the jury. He did not express his acceptance of responsibility for his conduct at trial.  Instead, he generally acknowledged  social  wrongdoing,  see  Trial  Tr.  (Day  1)  at  236:12-16  (Jones),  but  denied  any coercion, see Trial Tr. (Day 4) at 286:2-5 (Jones).  For these reasons, the Court determines that Bindues has not met his burden of showing that he "*only* disputed purely legal questions in going to trial and did not contest material facts relating to his guilt of the charged offenses."  United States v. Herriman, 739 F.3d at 1257 (emphasis in original).

- 27 -

**IT IS ORDERED** that: (i) the objections in the Defendant's Sealed Sentencing Memorandum, filed August 2, 2023 (Doc. 151), are overruled; (ii) Defendant Johnathon Bindues' base offense level is subject to a 5-level increase pursuant to U.S.S.G. § 4B1.5(b); (iii) Bindues' base offense level is not subject to a 2-level reduction under U.S.S.G. § 3E1.1(a); (iv) Bindues' total offense level is 43; (v) Bindues' criminal history category is I; and (vi) Bindues' Guideline imprisonment range is life.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alexander M. M. Uballez
  United States Attorney
Jaymie L. Roybal
Patrick Cordova
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

 *Attorneys for the Plaintiff*

Alexandra W. Jones
Jones Law Firm LLC
Albuquerque, New Mexico

 *Attorney for the Defendant*